Edward D. SAWYER et al., Appellants,

v.

**BOARD OF REGENTS OF CLAREDON JUNIOR COLLEGE et al., Appellees.**

No. 7512.

Court of Civil Appeals of Texas.

Amarillo.

July 6, 1965.

Rehearing Denied Sept. 7, 1965.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellants.

Simpson, Adkins, Fullingim & Hankins, Amarillo, Knorpp & Slavin, Clarendon, for appellees.

DENTON, Chief Justice.

This is an election contest. This appeal is from a judgment entered after the consolidation of two cases filed in the trial court. In Cause No. 3139 appellant, Edward D. Sawyer, filed suit against the Board of Regents of Clarendon Junior College and the County Attorney contesting an election held on January 28, 1964, which the Board had called for the purpose of determining whether the Board should have the power to levy and collect an ad valorem tax on taxable property in the junior college district for the maintenance of the college at a rate not to exceed 85¢ on the $100.00 valuation. Cause No. 3164 was filed by appellant Sawyer and other resident taxpayers against the Board of Regents and junior college district contesting the same election and seeking an injunction to prohibit the defendants from giving effect to such election by levying, assessing, or collecting taxes authorized by such election. The election resulted in authorizing the Board of Regents to levy and collect the proposed ad valorem tax by 535 votes for to 319 votes against. The trial court, without a jury, entered judgment denying the election contest and the injunctive relief sought and declared the election valid.

Appellants' first contention is that the election of January 28, 1964, is invalid for the reason it was called and held at a time when litigation involving two previous elections were pending in the courts. The previous elections were held on December 21 and on December 27, 1962. The election of December 21, called by the County School Trustees of Donley County, was to determine whether or not the territory in the Clarendon Consolidated Independent School District should be annexed and included in the junior college district for junior college purposes only. The December 27 election, called by the Junior College Board of Trustees, was to determine the power of the junior college district to levy and collect ad valorem taxes on taxable property within the district. Both elections carried and were subsequently contested by three suits which were later consolidated. The trial court's judgment declaring these elections valid was appealed to this court. On December 23, 1963, this court reversed the trial court and rendered judgment that the two elections were void and of no effect. See Derrick v. County Board of Education of Donley County, 374 S.W.2d 259. Appellee's motion for rehearing was denied January 20, 1964, and on March 25, 1964, the Supreme Court dismissed appellee's application for writ of error, and this court issued its mandate on May 15, 1964. The election under consideration here was called by the Junior College Board of Regents on January 3, 1964. This election was called after the decision of this court was announced in the prior case and before the motion for rehearing was acted upon. That decision did not become final until the Supreme Court dismissed appellee's application for writ of error.

As we understand it, appellants take the position the pending litigation deprived appellees of the power and jurisdiction to call and hold the election on January 28, 1964. The argument is that jurisdiction of this court had attached and pending a final judicial determination of the validity of the first elections, which result would determine the boundaries of the junior college district, the appellees had no authority to call and hold the election involved here.

In support of this contention appellants cite State ex rel. George v. Baker, 120 Tex. 307, 40 S.W.2d 41; Lynn County School Board v. Garlynn Common County Line School District (Tex.Civ.App.) 118 S.W.2d 1070, (Error Refused); Wichita Common School District No. 11 v. Dickens Independent School District (Tex.Civ. App.) 206 S.W.2d 885 (Error Refused); Singleton v. Smithers (Tex.Civ.App.) 359 S.W.2d 152 (Refused, NRE); among others. In the Baker case the County Judge of Hidalgo County had ordered an election to determine whether a certain common school district should be incorporated as an independent school district. After the election had been ordered and before it was held, the County Board of Trustees of that county ordered a redistricting of the common school district so as to place a portion of that district into two other adjacent common school districts. In holding the Board of Trustees' order invalid, the Supreme Court enunciated the general rule as follows:

> "It is the rule of this state and practically the universal rule that, where co-ordinate jurisdiction over a particular subject-matter is vested in two distinct tribunals, the tribunal first acquiring jurisdiction has the right to retain jurisdiction until it has completely disposed of all matters and issues so presented to it, and no co-ordinate tribunal has any right to interfere with the tribunal first acquiring jurisdiction."

This same rule was followed in the cases cited above in which conflicting actions were. taken by various officials or school boards. It is appellants' position this rule is applicable here and that such rule of law makes the election of January 28 invalid. We are unable to agree. The cases are distinguishable on the facts and the issues involved. In the first place the election of December 21, 1962, was an election to determine whether the Junior College District was to be expanded. No such question was presented in the election here under consideration. The election of December 27, 1962, was to determine the power of the Junior College District to levy and collect ad valorem taxes within the expanded area; whereas the election here dealt with the power of the Junior College District to levy and collect ad valorem taxes on property lying within the old Junior College District or that area constituting the district before the 1962 election was called and held. The 1962 election was for the purpose of setting the rate of tax as not to exceed 60¢ per $100.00 valuation; and the 1964 election authorized a rate not to exceed 85¢ per $100.00 valuation. The subject matter of the 1962 elections and the 1964 election was related but not identical.

We specifically held in the Derrick case that the elections of 1962 were void and of no effect. There were no conflicting actions taken by the Junior College Board of Regents and the Donley County Board of Education. The elections of December 21 and 27 being void are subject to collateral attack. Mesquite Independent School District v. Gross, 123 Tex. 49, 67 S.W.2d 242. In view of the facts and circumstances of this case, we are of the opinion this question is determined by the reasoning and holding in Stephens v. Dodds (Tex.Civ.App.) 243 S.W. 710. There the Royston Independent School District, upon petition, called an election on June 22, 1921, to be held on July 14 to determine whether or not there should be a tax levied not to exceed $1.00 on the $100.00 valuation of taxable property to supplement the state school fund. The election was held and the votes were canvassed on July 16, and it was declared that the election carried. An election contest was filed on August 3. The Board of Trustees, after notice of the contest and while it was still pending, passed an order that the election was illegal and void; and after procuring another petition, called for another election on the same subject to be held September 3, 1921. This election also resulted in the proposition being carried. On September 5 the District Court held the July 14 election illegal and void.

The contestants petitioned the court to declare the second election void on the ground the Board of Trustees had no authority to declare the election void and that such Board had no authority to call another election until the previous election had been declared void by the courts. The Court of Civil Appeals agreed that it was the exclusive authority of the courts to declare an election void and that the Board's order calling the first election, if not authorized by law, "was simply a nullity, and no tax could be levied or collected by virtue thereof. This would be true whether the election was ever contested or not. It was subject to collateral attack any and every where. The trustees were not bound by it more than any other person, and could ignore the void order and under proper petition order an election for the purpose which the law specifically empowered them to order." The fact that the Clarendon Junior College Board of Regents did not recognize the illegality of the former elections would not nullify the effect of the holding of the Stephens case. In the Derrick case, supra, we held the County School Trustees "were wholly without authority to act in the calling of the election or in canvassing the returns thereof and their acts were void and of no effect." As stated in Stephens v. Dodds, supra, "An order for an election which is void for want of power to make cannot be valid for any purpose even as a shield protecting owners of property in a district from a valid order lawfully entered. That which is void can never be valid." We therefore conclude the election of January 28, 1964, was not void because of the pending litigation involving the two previous elections.

■ Appellants next challenge the January 28 election because Article 2790, Vernon's Ann.Civ.St., prohibits another election to authorize the levying and collecting of ad valorem taxes to be held until the expiration of two years from December 22, 1962. The appellees were authorized to conduct elections for maintenance taxes under the provisions of Articles 2815h, Section 7, and

2815h–3b, V.A.C.S. These statutes provide that such elections should be in accordance with the provisions of the general law for elections in independent school districts. The pertinent part of Article 2790 provides:

> "Where a maintenance tax has been voted, no election to revoke, modify or increase the same shall be held until two (2) years from the date of the election authorizing such maintenance tax; * * *."

It is appellants' contention this provision makes the election of January 28, 1964, invalid and of no effect. We overrule this contention. The two-year limitation relates to a previous election where a maintenance tax "has been voted." This court has judicially determined the elections of December, 1962, were void and of no effect. Thus, no tax had been "voted" within a two-year period prior to the election under consideration. Since a void election can not effect a maintenance tax, the two-year provision of Article 2790 does not come into play and does not invalidate this election.

The election under attack sought authorization for a maintenance tax of 85¢ on a $100.00 valuation. Appellants take the position this is unauthorized because the tax rate exceeds the statutory limitation of such taxes. They assert that the tax limitation is imposed by either Article 2815h, Section 7, or Article 2815h–3b, in that neither of these statutes permits a tax rate to the extent of 85¢ on the $100.00 valuation. Section 7 of Article 2815h provides:

> "[T]he total amount of tax levied for Junior College purposes shall never exceed twenty (20) cents on the One Hundred Dollars of property valuation."

Section 1 of Article 2815h–3b, after authorizing junior college boards "to levy and collect taxes for the support and maintenance of such Junior Colleges," provides, "[T]he total amount of tax levied for the Junior College purposes should never exceed One Dollar ($1) on the One Hundred

Dollars ($100) valuation of property." Section 2a of Article 2815h–3b, reads:

"Sec. 2a. The Governing Board of Junior Colleges, in addition to the levying and collecting of the annual ad valorem tax not to exceed One Dollar ($1) on the One Hundred Dollars ($100) valuation of taxable property within the district for the maintenance of schools therein, shall have the power to levy a tax not to exceed Fifty cents (50¢) on the One Hundred Dollars ($100) valuation of taxable property within the district for the construction and equipment of school buildings and the acquisition of sites therefor within the limits of the district, when authorized by an election as aforesaid; provided, however, that the amount of maintenance tax together with the amount of bond tax of the district shall never exceed One Dollar ($1) on the One Hundred Dollars ($100) valuation of taxable property."

■ The argument is made that in the event Section 7 of Article 2815h is not applicable, Section 2a of 2815h–3b limits the maintenance tax rate to 50¢ on the $100.00 valuation. This argument presumes the appellee junior college district has in fact levied a tax of 50¢ on the $100.00 valuation for the construction and equipment of school buildings. The record does not bear out this presumption, and there is no evidence in this record to indicate appellees have levied any tax for construction or equipment. Appellants cite Sheppherd v. San Jacinto Junior College District, 363 S.W.2d 742 (Supreme Court, 1962), in support of their contention. In our opinion this decision gives no comfort to appellants. There the sole question was whether or not that portion of Article 2815h, Section 7, which provides that a junior college district may levy and collect a local ad valorem tax for the support and maintenance of the junior college was constitutional. That question is not before us. The fact it is constitutional does not mean, and the Su-

preme Court did not hold, it was the only statute authorizing and limiting a maintenance tax for junior colleges. To so hold would completely nullify the effect of the language referred to above in Article 2815h–3b. One of the cardinal rules of statutory construction is to ascertain the legislative intent and to give effect to every expressed declaration thereof. Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929; Shanken v. Lee Wolfman, Inc. (Tex.Civ.App.) 370 S.W.2d 197 (Refused, NRE).

■ We think an uncodified section of 2815h–3b sheds some light on this question. Section 8, Chapter 70, H.B. No. 35, at Page 103, General and Special Laws, Texas Fifth Legislative Regular Session, 1947, contains the following language:

"The fact that Junior Colleges covered by this Act are in need of additional revenues, which, under present law, they are unable to obtain, the importance of this legislation, and the crowded condition of the calendar, create an emergency and an imperative public necessity."

It is clear the legislative intent was to allow junior college districts to secure additional revenues by permitting them to increase the tax rate to $1.00 on $100.00 valuation. This increased limitation also conforms to the constitutional limitation set by Article 7, Section 3 of the Texas Constitution, Vernon's Ann.St. We conclude the tax rate of 85¢ on $100.00 valuation was not in excess of the statutory limitation.

■ Appellants next contend the Board of Regents of the junior college was not legally created and that it was appointed by the Board of Trustees from Clarendon Consolidated School District rather than elected as required by law. Although we are of the opinion this point of error was not properly raised in the trial court, we do not think it has merit. We are of the opinion the appointment of the 9 member Junior College Board by the independent School District

Trustees on May 9, 1963, was in accordance with Article 2815o-1. Section 2 of that article specifically provides the alternative procedure of appointment of junior college Board of Regents by the independent school district trustees who wish to relinquish control of junior colleges. Contrary to appellants' contention there is no requirement under Article 2815o-1 that the territories of the two districts have common boundaries. It is uncontradicted the Junior College was under the management, control, and operation of the Clarendon Consolidated Independent School District prior to the time of the appointments. We therefore conclude the Board of Regents was lawfully constituted and had the authority to call and conduct the election.

 Appellants next assert that if the Junior College Board was legally constituted, the meeting of January 3, 1964, at which time the Board called the election, was not a legally constituted one. They contend the meeting was not a regular meeting; that it was not legally called; and was not attended by all members of the Board. By other points on this subject the contention is made there is no evidence and insufficient evidence to support the trial court's findings that every board member was notified of the meeting of January 3 and that no member was absent from the meeting because of a lack of usual notice. There is no statutory requirement that elections must be called at regular meetings of the Boards or that every member attend. The January 3 meeting was attended by all members of the Board except Quinn Aten. Therefore appellants' points challenging the notice given of the meeting have to do with the notice given Mr. Aten and the fact that he was absent. Appellants cite Singleton v. Smithers, supra; Webster v. Texas & Pac. Motor Transport Co., 140 Tex. 131, 166 S.W.2d 75; Palmer v. District Trustees of District No. 21 (Tex.Civ.App.) 289 S.W.2d 344 (Refused, NRE), for the proposition that a special meeting of school trustees at which one member of the board was not present and not notified was not a

legal meeting. We think these decisions, under their proof and applicable statutes, were correct. However in each of these cases the fact that a member of a particular board received no notice of the meeting was either clearly established or not controverted. In determining the issue here we must review the evidence in accordance with the rules announced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. The board members were notified by telephone by Mrs. Naomi Phelan, an employee of the college. In response to a question whether or not he had any notice of the January 3 meeting, Mr. Aten testified:

"I don't remember. I sure don't."

Another answer of Mr. Aten to the same question was:

"I don't remember of a meeting that I wasn't notified on."

He further testified:

"I thought and still think I was notified on every called meeting or every special meeting or regular meeting."

Mrs. Phelan testified she notified the board members of the regular meetings by mail and special meetings by telephone. She explained her procedure of notice of special meetings:

"A special meeting I call them by telephone and talk to them, either individually or leave word with their wives or someone at their home or business."

She testified she notified the board members of the January 3 meeting by telephone but couldn't specifically remember who she talked to. There is no evidence from Mr. Aten or any other witnesses that he was not notified. Unless the record shows to the contrary every reasonable presumption will be indulged in favor of the findings and judgment of the trial court. Greenway Parks Home Owners Ass'n v. City of Dallas, 159 Tex. 46, 312 S.W.2d 235; Collins v. Tucker (Tex.Civ.App.) 333 S.W.2d 218. We therefore are of the opinion there was evidence to support the trial court's

findings relating to notice and conclude the meeting of January 3, 1964, was a legal meeting.

▇ The contention is next made that the purported petition for election, order calling the election, and notice of election were illegal on the grounds that they did not define or set out the boundaries of the Junior College District. This identical question was decided adversely to appellants' contention in Jordan v. Overstreet (Tex.Civ.App.) 352 S.W.2d 296. That case involved a contest of an election to decide whether two school districts should consolidate. The court held that a metes and bounds description is not required to be given in these instances. Whether it be stated the election was held under Article 2815h, Section 7, or 2815h–3b, there is nothing in either article which requires a metes and bounds description in any of the instruments essential to the conduct of an election of the nature heard here. A review of this record reveals no showing of any confusion which prevented any qualified voter from casting his vote.

▇ The contention is next made that there was certain irregularities in the posting of the notices of the election. The posting of such notices of elections of the type involved here is regulated by Article 2785, V.A.C.S. The pertinent part of that article reads:

> "On presentation of said petition, said officer or officers shall order an election for such purpose, and order the sheriff to post notices thereof in three (3) places in the district for ten (10) days prior thereto, or if for an independent district, the secretary of said board of trustees shall post such notices."

The proof shows M. L. Todd, secretary of the Board of Regents, signed the notices, but they were actually posted by Mrs. Naomi Phelan, the same college employee already referred to. The notices were posted at the County Courthouse in Clarendon, the Clarendon City Hall, and the Clarendon School Administration Building. The rule is well settled that statutes regulating the matter of holding an election are merely directory and a departure from their provisions will not, ordinarily, invalidate an election, unless such departure or such irregularity has affected or changed the result of the election. Hill v. Smithville Independent School District (Tex.Comm.App.) 251 S.W. 209 (Opinion Adopted); Sykes v. Pandora Independent School District (Tex. Civ.App.) 14 S.W.2d 124 (Writ Refused); Waters v. Gunn (Tex.Civ.App.) 218 S.W.2d 235 (Refused, NRE). There is no evidence the posting irregularity deprived any voter of notice of the election or that any voter failed to vote because of such irregularity. We think the trial court correctly found the irregularities complained of were not fatal to the election.

▇ Appellants next complain of irregularities in that employees of the Junior College, including the chairman of the Board of Regents, assisted in holding the election. The trial court found and, we think correctly so, that these people were disqualified to act as election judges and clerks. Article 3.04, Texas Election Code, V.A.C.S. However the trial court found there was no evidence these disqualified persons attempted to exercise any influence on any voter, or that there was any unfairness or fraud in the conduct of the election. We think the record fully supports the trial court's finding under such a record. It has repeatedly been held such irregularities are not sufficient to void an election. Guerra v. Ramirez (Tex.Civ.App.) 351 S.W.2d 272 (Writ Dismissed); Stafford v. Stegle (Tex Civ.App.) 271 S.W.2d 833; Miller v. Tucker (Tex.Civ.App.) 119 S.W.2d 92.

▇ The next question presented has to do with such irregularities as permitting persons to vote without establishing their right to vote as required by the election code. The irregularities alleged include permitting some to vote without establishing they had paid a poll tax or were entitled to an exemption; a violation of Article 8.11

of the Election Code dealing with the handling and the numbering of the ballots; and the violation of the requirement the two election judges shall assist a physically handicapped person to vote as provided for in Articles 8.13 and 8.28 of the Election Code. The record shows there "were quite a few people" who voted who did not present a poll tax receipt to the election officials. In such cases they were required to sign a sheet of paper stating they had paid their poll taxes or were over the age of sixty years and, thus were entitled to an exemption. Of the 854 votes cast and counted appellees admitted some 285 persons voted without having a poll tax receipt. There is no evidence these voters had not in fact purchased a poll tax or were not eligible for an exemption. No one administered the oath to those stating they were over sixty years of age or those stating they had paid their poll tax but did not have it in their possession. Approximately 20 ballots were taken outside the polling place by one election official to disabled persons sitting in automobiles. The record further shows some 10 persons were denied the right to vote, and 9 others were allowed to vote but who had their vote disallowed by the election judge who later determined they resided outside the Junior College district. Obviously there were irregularities in the holding of the election; but the evidence does not support appellants' contention they were sufficient to void the election. The irregularities complained of involved statutory provisions which are directory. The tendency to construe election code provisions as directory rather than mandatory is salutory because it leads to the true expression of the will of the voters. Stafford v. Stegle, supra; Wooley v. Sterrett (Tex. Civ.App.) 387 S.W.2d 734. We find no evidence of fraud or misconduct on the part of the election officials. Neither do we find any evidence that the irregularities complained of affected the result of the election. Under such facts and circumstances we are of the opinion, and so hold, the irregularities were not sufficient to invalidate the election.

Appellants' points of error thirty-four through forty-four raise substantially the same objections to the election that were raised in points of error discussed up to this point. Several of these points, particularly thirty-four, thirty-five and thirty-six, are multifarious. These three points contend, in addition to the reiterating of previous contentions, that the composite or cumulative effect of the irregularities renders the election invalid. Having held these irregularities complained of did not constitute error, we do not think the composite of such irregularities would enhance the error. In order not to unduly extend this opinion, we think it is sufficient to say that what has been said relative to the previous points is sufficient to dispose of this group of points.

Points of error forty-five, forty-six, and fifty-three question the legality of the petition for election. The contention is made the petition was not signed by the number of required qualified voters, and that the Board did not determine that the petition was signed by the required number. The record shows the petition contained 308 signatures. The Minutes of the Board of Regents recites that the "petition signed by 308 persons" was considered, and the Minutes continued:

"It appearing to the satisfaction of the Board of Regents that said petition is signed by at least 250 resident, qualified, property taxpaying voters of said College District, who own taxable property in said district, and who have duly rendered the same for taxation, and is otherwise in conformance with law, the Board is of the opinion that said petition should be granted, and said election as prayed for should be ordered."

The formal "Order for Tax Election" was a printed form which recited that the petition was signed by at least "20 resident, qualified, property taxpaying voters." Although this latter recital is in conflict with the finding of the Board as evidenced by its Minutes, this is not a fatal defect. Article 2815h–3b provides that " * * * upon

petition signed by two hundred and fifty (250), or a majority, of the qualified property taxpaying voters residing in such district * * *. It shall be the duty of such board to order such election * * *." Thus, the article simply requires 250 qualified voters to sign the petition. The Board's Minutes and the exhibit introduced into evidence reflect this was done. The Board's Minutes and the first paragraph of the election order show the petition was actually signed by 308 persons. Appellants have failed to show by brief or reference to the record that less than 250 qualified voters signed the petition for election.

■ The appellee Board of Regents held a special meeting on February 3, 1964, for the purpose of canvassing the returns of the election and declaring the results thereof. Appellants challenge the legality of this meeting on substantially the same grounds as they have the January 3 meeting, previously disposed of. We think this contention should be overruled for the same reasons. In addition the meeting of February 3 was called to perform an administrative function as distinguished from a policy making function. Admittedly, three board members were absent from the February 3 meeting; but there is a total absence of evidence of fraud or any other irregularity on the part of the Board in canvassing the returns of the election. Appellants' contention is without merit.

■ It is next alleged the election of January 28 authorizing the Junior College District to levy and collect taxes for the year of 1964 was an illegal retroactive tax. The argument is that taxes accrue on the first of each year, and for a tax to be levied after that time could not revert back to the first of that year. No authority is cited for this contention. We have not found nor been cited to any case directly in point. However the reasoning of several cases, including one by the Supreme Court, supports the action of the Board of Regents. In Cadena v. State (Tex.Civ.App.) 185 S.W. 367 (Error Refused), the ques-

tion arose whether a school district created on June 19, 1915, could levy a tax in September of 1915 for the year 1915. The court there held the school district had authority to do so. The Commission of Appeals in Blewitt v. Megargel County Line Independent School District, 285 S.W. 271 (Opinion Adopted), referred to the Cadena case in the following language:

"The decision in the case of Cadena v. State (Tex.Civ.App.) 185 S.W. 367, is authority for the proposition that, when an independent school district is created after the 1st of January of a given year, all property within such newly created district, which was owned by the taxpayer on January 1st of that year, 'is subject to any tax authorized by law, whether such taxes have been authorized theretofore or may be authorized during the year, and can be levied by the body given the power to levy at any time during the year.' The Supreme Court denied a writ of error.

"We consider the proposition sound."

We note this significant language in the Cadena case:

"Laws naming the time for the levy of taxes are merely directory, and legal taxes can be levied whenever the necessity arises. Laws authorizing taxes are not retrospective so far as the year in which they are authorized is concerned."

We conclude the reasoning of these cases supports the action of appellee in levying and collecting ad valorem taxes for the year 1964.

A careful examination of this lengthy record convinces us no reversible error is shown by appellants' points of error. As stated, there were irregularities committed in the process of calling, ordering, and conducting the election of January 28, 1964. However, such irregularities were not of such a nature to cause the election to be set aside. There is no evidence of fraud or misconduct on the part of any person in-

volved. The result is, as impliedly found by the trial court, the election was a true expression of the will of the voters.

The judgment of the trial court is affirmed.