**THE CITY OF SHERMAN, Mayor Julie Ellis Starr, Former Mayor Harry Reynolds, and City Clerk Helen Friend, Appellants,**

v.

**Carl HUDMAN, Sherman Police Association, Mike Roberts, J.W. Bain, and Sherman Firefighters Association, Appellees.**

No. 05–95–01600–CV.

Court of Appeals of Texas, Dallas.

June 25, 1999.

906

C. Robert Heath, Bickerstaff Heath Smiley Pollan Kever & McDaniel, Austin, for Appellant.

Roger D. Sanders, Sanders O'Hanlon & Motley, P.C., Sherman, B. Craig Deats, P.C., Austin, for Appellee.

Before Justices MALONEY and MOSELEY.[1]

1. Justice Ron Chapman was a member of the panel at the time this case was argued and submitted for decision. Justice Chapman retired from the Court on December 31, 1998. Therefore, he did not participate in the issuance of this opinion.

## O P I N I O N

Opinion By Justice MOSELEY.

The City of Sherman, Mayor Julie Ellis Starr, Former Mayor Harry Reynolds, and City Clerk Helen Friend (collectively "the City") appeal the trial court's judgment voiding the results of an election repealing the City's adoption of the Fire and Police Employee Relations Act.[2] In fifteen points of error, the City generally asserts (1) the trial court did not have jurisdiction to render a judgment, (2) the trial court applied incorrect legal findings of fact. For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

In 1974, Sherman voters adopted the provisions of the Fire and Police Employee Relations Act. Under this act, police and firefighters are granted the right to organize and collectively bargain with the City regarding compensation, hours, and other conditions of employment.[3] Collective bargaining rights, once adopted, may be repealed only by an election called by the City after receiving a petition signed by a sufficient number of voters.[4]

In early 1995, the Sherman City Council sought repeal of collective bargaining rights for police and firefighters. According to testimony at trial, the City wanted to place the repeal measure on the May 6, 1995 general election ballot because a general election brought out a greater number of voters thereby increasing the probability that the repeal measure would pass. John Gilliam, the city attorney, prepared a petition form at the request of H.K. Lyde, a Sherman citizen active in the repeal effort. According to Gilliam, the petition form was drafted in an attempt to comply with state law and city charter requirements. The petition form called for "the repeal of collective bargaining rights for Sherman policemen and firefighters pursuant to section 174.053 of the local government code." Lyde and others circulated the multiple petition forms and obtained signatures. Thirty-seven separate petition forms were received by the city clerk's office between January 23, 1995 and February 8, 1995. When each form was submitted, it was stamped "received," and the time of receipt was noted. After receiving all thirty-seven petition forms, the city clerk, Helen Friend, verified the signatures and certified the thirty-seven forms as one petition. Friend testified she placed all the petition forms in a single file folder and intended to treat them as a single document.

After receiving the petition forms, the Sherman City Council passed Ordinance 4401 placing the collective bargaining repeal measure on the May 6, 1995 general municipal election ballot. During the first reading of the proposed ordinance at the city council meeting, questions arose about the validity of the sworn circulator affidavits on several of the petition forms. Specifically, it came to light that Mayor Reynolds had circulated some petitions and obtained signatures. Gilliam went to the city clerk's office to see if Mayor Reynolds had signed any circulator affidavits. Gilliam found no petition forms signed by Mayor Reynolds. However, Gilliam ascertained that Lyde had signed as circulator three petition forms that were actually circulated by Mayor Reynolds.

While at the city clerk's office, Gilliam also learned a woman named Virginia Evans had signed a circulator affidavit on a petition form she did not circulate. Evans had taken a petition form circulated by her employer to the city clerk's office for filing. The deputy clerk, Linda Ashby, noticed the circulator affidavit had not been signed and told Evans she needed to sign it. Evans informed Ashby she did not circulate the petition form and had not witnessed any of the signatures. Ashby consulted Friend about the matter, and

---

2. *See* Tex. Local Gov't Code Ann. § 174.001–.253 (Vernon 1999).

3. *Id.* § 174.023.

4. *See id.* § 174.053(a).

Friend stated that for Evans to submit the petition form, she would have to sign the circulator affidavit. Ashby relayed this information to Evans. According to Evans, both Ashby and Friend watched her sign the circulator affidavit knowing she (Evans) had not circulated the petition form.[5]

Because of the problems, the City decided to disregard (but not officially decertify) the sixty-five signatures involved in the Lyde and Evans petition forms because the remaining petition forms collectively contained a total number of signatures that exceeded the minimum number of signatures required to call the election under section 174.053(a) of the local government code. City officials did not investigate any other circulator affidavits and represented they knew of no problems with the other petition forms. However, after the election, it was discovered that Lyde signed circulator affidavits on eight additional petition forms without actually witnessing the signatures thereon.

Before the election, the police and firefighters sought a temporary and permanent injunction, mandamus, and declaratory judgment in the district court on the ground the petition was invalid for failure to comply with applicable state law and city charter requirements. At the City's urging, the trial court declined to enjoin the election and abated the action until after the election on May 6, 1995. The repeal measure appeared on the May 6 ballot.

After the votes were canvassed, the City declared the repeal measure passed by 257 votes. Thereafter, the police and firefighters amended their pleadings to add an election contest to their suit. The City filed a plea to the jurisdiction asserting the trial court did not have jurisdiction because the election contest was filed before the election was held and, thus, was premature. The City further asserted the declaratory judgments act did not confer independent jurisdiction on the trial court.

The trial court denied the City's plea to the jurisdiction.

The case was called to trial before the court and, after hearing evidence, the trial court entered findings of fact and conclusions of law. The trial court concluded that, to be legally sufficient, the petition had to meet the requirements of chapter 174 of the Texas Local Government Code, chapter 277 of the Texas Election Code, and "all applicable provisions" of the Sherman City Charter. Because the petition forms did not comply with these requirements, the trial court concluded the City did not have statutory authority to call the repeal election and, therefore, the May 6, 1995 repeal election was void.

The trial court also found certain city officials involved in the election engaged in misconduct rising to the level of fraud such that the court could not ascertain the true outcome of the May 6 repeal election. Specifically, the trial court found the conduct of city officials in knowingly falsifying one circulator affidavit, failing to swear in the affiants of at least fifteen circulator affidavits, ignoring known false affidavits, failing to fully investigate the possibility that other false affidavits existed, and certifying unverified signatures, among other related misconduct, constituted election fraud. The trial court entered judgment declaring the May 6, 1995 repeal election void, setting aside the repeal election results, permanently enjoining the City from giving effect to the repeal election results, and awarding attorney's fees to the police and firefighters. The City now appeals this judgment.

## MOOTNESS

Following submission of this appeal, we requested the parties to submit additional briefing on whether the issues in this appeal are rendered moot by the results of a January 18, 1997 election repealing the collective bargaining rights for police and firefighters. After reviewing the

---

5. Although Friend gave contradictory testimony at trial, the trial court specifically found that her testimony was not credible.

briefs, the supplemental briefs, and the record, we conclude the issues raised by this appeal are not moot. Specifically, the outcome of this appeal will determine whether the parties were subject to collective bargaining during the period between the two elections. This issue is central to ongoing disputes between the parties, some of which have resulted in litigation. Accordingly, we will address the merits of this appeal.

## JURISDICTION

In its first point of error, the City contends the trial court erred in overruling the City's pleas to the jurisdiction because the trial court did not have jurisdiction over the declaratory judgment suit filed by the police and firefighters. Specifically, the City argues the trial court lacked jurisdiction because the police and firefighters were, in essence, challenging the election results and any challenge to the results of an election may be brought only as an election contest. The City further maintains that, even if the suit was considered an election contest, the trial court did not have jurisdiction because the election contest was filed prematurely.

The police and firefighters respond that the trial court obtained jurisdiction over the declaratory judgment action because in their pleadings they asserted the City was wholly without authority to call and hold the repeal election. The police and firefighters further argue they did not amend their pleadings to allege an election con-

test until after the election; therefore, the election contest was timely filed.

### A. Standard of Review

■ A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action.[6] The plaintiff bears the burden of alleging facts affirmatively showing the trial court has subject-matter jurisdiction.[7] When deciding to grant a plea to the jurisdiction, a trial court must look solely to the allegations in the petition.[8] Dismissing a cause of action for lack of subject-matter jurisdiction is only proper when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court.[9]

■ Because the question of subject-matter jurisdiction is a legal question, we review *de novo* the trial court's ruling on a plea to the jurisdiction.[10] We must determine whether a party has met its burden of pleading facts showing the trial court has subject-matter jurisdiction over the pending controversy.[11] We take allegations in the pleadings as true and construe them in favor of the pleader.[12]

### B. Applicable Law

■ The holding of an election and the election procedure are part of the political powers of the state; except as provided by statute, the judiciary has no control over the election process.[13] Section 221.002 of the Texas Election Code gives the district court exclusive original jurisdiction of an election contest.[14] Section 221.003 pre-

6. *Bland Indep. Sch. Dist. v. Blue*, 989 S.W.2d 441, 445 (Tex.App.—Dallas 1999, pet filed); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied).

7. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *Bland Indep. Sch. Dist.*, 989 S.W.2d at 446.

8. *Bland Indep. Sch. Dist.*, 989 S.W.2d at 446; *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex.App.—Austin 1994, writ denied).

9. *See Bland Indep. Sch. Dist.*, 989 S.W.2d at 446; *Sharp*, 874 S.W.2d at 739.

10. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, ——

U.S. ——, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *Bland Indep. Sch. Dist.*, 989 S.W.2d at 446.

11. *See Texas Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 142–43 (Tex. App.—Dallas 1998, no pet.).

12. *Texas Ass'n of Bus.*, 852 S.W.2d at 446.

13. *Moore v. Barr*, 718 S.W.2d 925, 926 (Tex. App.—Houston [14th Dist.] 1986, no writ); *Crittenden v. Cox*, 513 S.W.2d 241, 245 (Tex. Civ.App.—Eastland 1974, no writ).

14. *See* Tex. Elec.Code Ann. § 221.002(a) (Vernon 1986).

scribes the scope of inquiry in an election contest as follows:

(a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because:

(1) illegal votes were counted; or

(2) an election officer or other person officially involved in the administration of the election:

(A) prevented eligible voters from voting;

(B) failed to count legal votes; or

(C) engaged in other fraud or illegal conduct or made a mistake.

\* \* \* \* \*

(c) This section does not limit a provision of this code or other statute expanding the scope of inquiry in an election contest.[15]

A contestant may not file an election contest before the day after the election and must file it within thirty days of the date the official result of the contested election is determined.[16]

■ However, a void election is subject to collateral attack at any time.[17] If a governmental entity was wholly without authority to call an election, the election held pursuant to such an order is void.[18] An order for an election that is void for lack of authority to call that election cannot be valid for any purpose.[19]

■ In a collateral attack on the validity of an election, the court may not inquire into latent defects in the petition process; however, where the defect is substantial, appears on the face of the petition, and shows the governing entity's lack of statutory authority to call an election, any election held pursuant thereto is void.[20] A challenge to the statutory authority to hold an election may be brought by way of a declaratory judgment action.[21]

Under the Texas Uniform Declaratory Judgments Act, "[a] court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[22] The purpose of the declaratory judgments act is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."[23] The act permits interested persons to have a court determine any question of construction or validity arising under a statute and to obtain a declaration of the rights, status, or other legal relations thereunder.[24]

## C. Discussion

■ We first address the City's contention the trial court did not have jurisdiction over the declaratory judgment action. The City asserts that, because the police and firefighters are challenging the results of the May 6 election, their suit may be brought only as an election contest. However, the City concedes that, "if

15. TEX. ELEC.CODE ANN. § 221.003(a),(c) (Vernon 1986).

16. See id. § 233.006(a),(b).

17. See Mesquite Indep. Sch. Dist. v. Gross, 123 Tex. 49, 57, 67 S.W.2d 242, 246 (1934); Sawyer v. Board of Regents, 393 S.W.2d 391, 396 (Tex.Civ.App.—Amarillo 1965, no writ).

18. See City of Kingsville v. International Ass'n of Firefighters, Local Union No. 2390, 568 S.W.2d 397, 400 (Tex.Civ.App.—Corpus Christi 1978, no writ).

19. See Sawyer, 393 S.W.2d at 396.

20. See West End Rural High Sch. Dist. v. Columbus Consol. Sch. Dist., 148 Tex. 153, 158, 221 S.W.2d 777, 780 (1949) (citing Cary v. Simpson, 239 Ky. 381, '39 S.W.2d 668, 670 (1931)).

21. See City of Kingsville, 568 S.W.2d at 399; see also City of Honey Springs v. Templeton, 194 S.W.2d 620, 623 (Tex.Civ.App.—Dallas 1946, writ ref'd n.r.e.).

22. TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 1997).

23. Id. § 37.002(b).

24. Id. § 37.004(a).

the governmental entity was wholly without authority to call the election so that the election was void (as opposed to voidable), then a declaratory judgment action might be proper." Our review of the pleadings shows that, although the police and firefighters challenged the election results, they also alleged that defects apparent on the face of the petition forms deprived the City of any statutory authority to call the election. The allegation that the City did not have authority to call the election is in addition to and separate from the allegations of wrongdoing and fraud in the process of the election which allegedly affected the outcome of the election.

■ While allegations of wrongdoing and fraud in the process of the election are proper subjects of an election contest,[25] an allegation the City had no statutory authority to hold the repeal election is not.[26] Resolving such an allegation requires judicial interpretation and construction of the Fire and Police Employees Relations Act, the Texas Election Code, and the Sherman City Charter. Therefore, the allegation the City had no statutory authority to hold the repeal election falls within the ambit of the declaratory judgments act.[27] The police and firefighters alleged facts that, if true, entitled them to a declaratory judgment that the election was void.[28] Accordingly, we conclude the trial court did not err in denying the City's plea to the jurisdiction to the extent it complained the trial court did not have jurisdiction over the declaratory judgment action.

■ We next address the City's contention that the trial court did not obtain jurisdiction over the police and firefighters' election contest because it was prematurely filed. On May 19, 1995, after the May 6 election and within the thirty-day period for bringing an election contest, both the police and firefighters amended their pleadings to add a claim that the election was void because of fraud, illegal conduct, or mistake by the City which affected the repeal election's outcome. Before May 19, neither the police nor the firefighters asserted grounds constituting an election contest. Thus, contrary to the City's assertion, the police and firefighters did not contest the election results until after the election was held. The amended pleadings asserting an election contest were filed within the statutory period for bringing an election contest.[29] Accordingly, the trial court did not err in denying the City's plea to the jurisdiction on the ground that the election contest was prematurely filed. We overrule the City's first point of error.

## STANDARD OF REVIEW

■ In its remaining points of error, the City challenges the various findings of fact and conclusions of law entered by the trial court. Findings of fact entered in a case tried to a court have the same force and dignity as a jury's verdict upon special issues.[30] We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special issue.[31] We do not substitute our

**25.** See TEX. ELEC.CODE ANN. § 221.003 (Vernon 1986) (tribunal determines whether outcome of election is not true outcome due to fraud or illegal conduct in administration of election); see also City of Kingsville, 568 S.W.2d at 400.

**26.** Commissioners' Court v. Rayburn, 264 S.W.2d 552, 555 (Tex.Civ.App.—Beaumont 1954, no writ) (statutory authority to hold election can be determined by declaratory judgment action).

**27.** See TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997); Rayburn, 264 S.W.2d at 555

(application of declaratory judgment act to construe statutes proper).

**28.** See City of Kingsville, 568 S.W.2d at 399.

**29.** See TEX. ELEC.CODE ANN. § 233.006(a),(b) (Vernon 1986).

**30.** Gregory v. Sunbelt Sav., F.S.B., 835 S.W.2d 155, 158 (Tex.App.—Dallas 1992, writ denied).

**31.** Baker v. Baker, 719 S.W.2d 672, 674 (Tex. App.—Fort Worth 1986, no writ).

judgment for that of the fact finder, even if we might have reached a different conclusion when reviewing the evidence.[32]

Instead, when addressing a legal sufficiency challenge we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary.[33] We uphold the finding if more than a scintilla of evidence exists to support it.[34] In reviewing a factual sufficiency challenge, we examine all of the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.[35]

■■■■■■ We do not review a trial court's conclusions of law for factual sufficiency.[36] When reviewing the trial court's legal conclusions, we evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts.[37] Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.[38]

## APPLICATION OF ELECTION CODE AND CITY CHARTER

In its fourth point of error, the City contends the trial court erred in concluding the repeal petitions did not comply with all applicable provisions of law. Under this point, the City argues the trial court erred in applying Texas Election Code and Sherman City Charter requirements to petitions seeking to repeal collective bargaining under chapter 174 of the Texas Local Government Code. The City asserts chapter 277 of the election code setting forth petition requirements is preempted by section 174.005 of the local government code and is therefore inapplicable to the repeal petition process.[39]

### A. Application of Election Code

■■■■ Chapter 174 of the local government code sets forth the requirements for adoption and repeal of collective bargaining rights for police and firefighters. Section 174.005 provides:

> This chapter preempts all contrary local ordinances, executive orders, legislation, or rules adopted by the state or by a political subdivision or agent of the state, including a personnel board, civil service commission, or home-rule municipality.[40]

Section 174.053(a) provides the governing body of a political subdivision shall order an election for the repeal of collective bargaining rights on receiving a petition signed by the requisite number of qualified voters of the political subdivision.[41] Section 174.053 also provides language that must appear on the ballot and prescribes the number of signatures that must be obtained to conduct the election.[42] However, chapter 174 does not otherwise prescribe the form or content of the repeal petition.

Chapter 277 of the election code establishes minimum requirements for petitions "authorized or required to be filed under a

---

**32.** *Federal Deposit Ins. Corp. v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex.App.—Dallas 1993, no writ).

**33.** *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

**34.** *Id.*

**35.** *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

**36.** *Sears, Roebuck & Co. v. Nichols,* 819 S.W.2d 900, 903 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

**37.** *Dallas Morning News v. Board of Trustees,* 861 S.W.2d 532, 536 (Tex.App.—Dallas 1993, writ denied).

**38.** *Waggoner v. Morrow,* 932 S.W.2d 627, 631 (Tex.App.—Houston [14th Dist.] 1996, no writ).

**39.** *See* Tex. Local Gov't Code Ann. § 174.005 (Vernon 1999).

**40.** *Id.* § 174.005.

**41.** *See id.* § 174.053(a).

**42.** *See id.* § 174.053.

law outside [the election code] in connection with an election ... "[43] Chapter 277 sets forth requirements for determining the validity of petition signatures,[44] withdrawing petition signatures,[45] supplementing the petition,[46] and computing and verifying the signatures.[47]

■ The City argues chapter 277 of the election code is preempted by chapter 174 of the local government code. We disagree. By its terms, section 174.005 preempts only laws *contrary* to provisions contained in chapter 174. Because chapter 174 is a law outside the election code that authorizes or requires a petition to be filed in connection with an election, we conclude the petition requirements of election code chapter 277 apply to repeal petitions under local government code chapter 174 to the extent they do not conflict with requirements contained in chapter 174.[48]

## B. Application of City Charter Requirements

■ The City also contends the provisions in the Sherman City Charter governing initiative and referendum petitions do not apply to a petition seeking the repeal of collective bargaining rights under chapter 174 of the local government code. We have already concluded chapter 277 of the election code applies to elections under chapter 174 of the local government code to the extent there is no conflict between them. Section 277.004 of the election code specifically makes effective "any requirements for the validity or verification of petition signatures in addition to those provided [by chapter 277 of the election code] that are prescribed by a home-rule city charter provision," if the charter provision was in effect September 1, 1985.[49]

The City does not dispute that it is a home-rule city and that its charter provisions relating to petition requirements were in effect on September 1, 1985. Instead, the City asserts that a repeal election under chapter 174 of the local government code is not an "initiative" or "referendum" as those terms are defined by the city charter.

The Sherman City Charter defines the power of initiative as "the power [of the electors] to propose any ordinance except an ordinance appropriating money, or authorizing the levy of taxes, and to adopt or reject same at the polls."[50] The charter defines the power of referendum as "the power of the electors to approve or reject at the polls any ordinance passed by the [city] council, or submitted by the council to a vote of the electors."[51] According to the City, these charter provisions only apply to the enactment and repeal of ordinances and, in an election held under chapter 174 of the local government code, no ordinance was before the voters.

■ A municipal government acts through the passage of ordinances, which are municipal bylaws passed by the governing body of the municipality for the regulation, management, and control of its affairs and those of its citizens.[52] Therefore, for a city to hold an election, the city

---

**43.** Tex. Elec.Code Ann. § 277.001 (Vernon Supp.1999).

**44.** *See id.* § 277.002.

**45.** *See id.* § 277.0022.

**46.** *See id.* § 277.0023.

**47.** *See id.* §§ 277.0024 & 277.003.

**48.** *See* Tex. Local Gov't Code Ann. § 174.005 (Vernon 1999) (chapter preempts only *contrary* law); *see also* Op. Tex. Sec'y State No. JH–4 (1993) (signatures on petition for election under Fire and Police Employee Rela-

tions Act must comport with requirements of section 277.002(a) of election code).

**49.** Tex. Elec.Code Ann. § 277.004 (Vernon Supp.1999).

**50.** Sherman City Charter art. IX, § 1.

**51.** *Id.* art. IX, § 2.

**52.** *Dallas Power & Light Co. v. Carrington,* 245 S.W. 1046, 1048 (Tex.Civ.App.—Dallas 1922, writ dism'd); *see also Tharp v. Blake,* 171 S.W. 549, 551 (Tex.Civ.App.—El Paso 1914, no writ) (governing body of municipality speaks through its ordinances).

council must pass an ordinance calling for the election. Here, the petition forms called for repeal of collective bargaining provisions pursuant to section 174.053 of the local government code. Section 174.053 provides that the governing body shall order an election when presented with a petition signed by the requisite number of qualified voters (*i.e.*, electors) of the political subdivision.[53] Therefore, a petition to hold an election under section 174.053(a) is essentially what the city charter defines as an initiative petition a petition by electors requesting the city council pass an ordinance calling for an election on whether to repeal collective bargaining rights.[54] Accordingly, we conclude that under section 277.004 of the election code, the provisions of the city charter relating to initiative petitions apply to the repeal petition process to the extent they do not conflict with the provisions of chapter 174 of the local government code. We overrule the City's fourth point of error.

## FACIAL DEFECTS IN REPEAL PETITION FORMS

We now turn to the City's fifth, sixth, and seventh points of error, in which it asserts the trial court erred in determining certain defects in the petition forms rendered them invalid to confer authority on the City to call the election.

### A. Compliance with Statutory and Charter Requirements

#### 1. Supplementing Petition/Sufficiency of Petition

Section 277.0023(a) of the election code provides a petition may not be supplemented, modified, or amended on or after the date it is received by the authority with whom it is required to be filed unless expressly authorized by law.[55] This provision does not conflict with any requirements contained in chapter 174 of the local

government code. Thus, it applies to the repeal election at issue here.

■■■ The trial court found none of the petition forms filed contained the requisite number of signatures to provide the City with authority to call the repeal election. The trial court also found no set of valid petition forms filed on any single calendar day contained a sufficient number of valid signatures. The trial court concluded as a matter of law that, by allowing the thirty-seven petition forms to be submitted on different days and at different times, the City allowed supplementation of the "petition" in violation of section 277.0023(a) of the election code.

In its seventh point of error, the City asserts the trial court erred in determining the multiple petition "pages" did not constitute a single petition. We will treat the City's contention as a challenge to the legal and factual sufficiency of the evidence supporting the trial court's findings of fact as well as a challenge to the trial court's conclusion of law that the City violated the election code by allowing supplementation of the petition.

Uncontroverted evidence in the record shows thirty-seven separate petition forms were submitted to the city clerk between January 23, 1995 and February 8, 1995 on different dates and at different times. Each petition form admitted into evidence by stipulation of the parties contains a date stamp showing the date and time of filing. A comparison of the petition forms shows they were filed on different days and at different times.[56]

Nevertheless, the City contends the thirty-seven petition forms constituted a single petition. In support of its argument, the City relies heavily on Friend's allegedly "uncontradicted" testimony that she gathered all of the petition forms in a single folder and, only when the last petition form was filed, did she accept all of the

---

**53.** *See* Tex. Local Gov't Code Ann. § 174.053(a) (Vernon 1999).

**54.** Sherman City Charter art. IX, § 6.

**55.** *See* Tex. Elec.Code Ann. § 277.0023(a) (Vernon Supp.1999).

**56.** A few of the petitions do not have a time noted on them.

forms as one petition. However, Friend's intent to treat the multiple petition forms as a single document is irrelevant in determining whether the petition forms constituted a single petition. Further, the trial court, as the fact finder, was not bound by Friend's testimony. The date stamps appearing on the petition forms indicate the forms were filed at various dates and times, and they clearly contradict Friend's testimony. Lastly, the petition forms themselves identify several different committees of electors "who as a committee of the petitioners, shall be regarded as responsible for the circulation and filing of the petition ... " according to the city charter. We conclude the trial court's finding of fact that thirty-seven separate petition forms were filed is supported by legally and factually sufficient evidence.

The City also contends the trial court erred in concluding as a matter of law that the repeal petitions were supplemented in violation of election code section 277.0023, which prohibits supplementation of petitions. We have already determined that election code chapter 277 applies to the petition process in this election. By treating petition forms filed on different days and at different times as one petition, the City allowed supplementation of the petition in violation of section 277.0023. Accordingly, we conclude the trial court correctly concluded the petition was improperly supplemented in violation of section 277.0023 of the election code. We overrule the City's seventh point of error.

## 2. Language of the Petition

The city charter provides that initiative petition papers shall contain the full text of the proposed ordinance.[57] This provision does not conflict with any provision in chapter 174 of the local government code and thus is not preempted by that chapter.

The trial court found the petition forms did not contain the full text of the ordi-

nance to be voted upon as required by the city charter. The trial court concluded the city clerk was without authority to certify the petition because the City failed to comply with the charter requirement.

In its fifth point of error, the City argues the trial court erred in determining the petition did not contain all of the language required by law. Specifically, the City contends the city charter provision requiring that the full text of the proposed ordinance be set out in the petition is inapplicable because this petition is not an initiative petition. According to the City, at most, the repeal petition is a referendum petition, and the city charter does not require referendum petitions to contain the full text of ordinances to be repealed.

The repeal petition forms contained the following language:

### REFERENDUM PETITION

A PETITION SEEKING THE REPEAL OF COLLECTIVE BARGAINING RIGHTS FOR SHERMAN POLICEMEN AND FIREFIGHTERS, PURSUANT TO SECTION 174.053 OF THE TEXAS LOCAL GOVERNMENT CODE.

The undersigned registered voters of the City of Sherman, Texas by the signature of their names, seek the repeal of collective bargaining rights for Sherman Policemen and Firefighters, pursuant to Section 174.053 of the Texas Local Government Code.

The petition forms do not contain the full text of the ordinance ordering the election and thus on their face do not comply with the charter requirement. We have already concluded the petition required under section 174.053 of the local government code is in the nature of an initiative petition as that term is defined in the city charter.[58] Contrary to the City's assertions, the title "Referendum Petition" is not determinative of the nature or effect of the petition.[59] Accordingly, we again

---

**57.** Sherman City Charter art. IX, § 4.

**58.** *See* Sherman City Charter art. IX, § 6.

**59.** *Cf. State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (Tex.1980) (substance rather than title determines nature of pleading); *Messmer*

reject the City's argument. Additionally, uncontradicted trial testimony showed the City used the same procedures for all election petitions. Thus, the City admittedly disregarded its own established petition procedures and now attempts to claim those procedures were not required by law. We conclude the trial court did not err in applying to the repeal petitions the Sherman City Charter requirement that initiative petitions must contain the full text of the proposed ordinance. Further, the trial court did not err in concluding the repeal petition did not contain all of the language required by the Sherman City Charter. We overrule the City's fifth point of error.[60]

### 3. Committee of Electors

The Sherman City Charter requires that every petition shall contain the names and addresses of "five (5) electors who, as a committee of the petitioners, shall be regarded as responsible for the circulation and filing of the petition."[61] This provision does not conflict with any of the requirements of chapter 174 of the local government code and thus applies to the election at issue here.

The trial court concluded the city clerk was without authority to certify the petition because there existed no committee of five electors and the petition forms failed to identify a single committee of five electors as required by the Sherman City Charter.

In its sixth point of error, the City argues the trial court erred in concluding the failure of the petition to identify a single committee of five electors deprived the city clerk of the authority to certify the petition as a valid basis for the repeal election. Specifically, the City contends that, be-

cause the committee list is not part of the certification process as set out in the city charter, the existence of multiple committees does not affect the validity of the signatures on the petition. The City does not dispute the fact that the petition forms contain more than one committee of five electors. Instead, the City asserts this defect should not affect the validity of signatures because the committee of electors is not considered in certifying a petition. To certify a petition, the city charter requires the city clerk to check for a signed circulator affidavit and determine if the requisite number of qualified electors signed the petition.[62] However, that the committee of electors is not considered during the certification process does not change the fact that the petitions wholly failed to comply with this requirement, a fact obvious from the face of the petition forms. Accordingly, we conclude the trial court did not err in concluding the petition failed to comply with the charter requirements. We overrule the City's sixth point of error.

### B. Effect of Non-compliance with Statutory and City Charter Requirements

Having concluded the City did not comply with statutory and city charter requirements, we next examine the effect of the City's noncompliance.

In its third point of error, the City contends the trial court erred in treating the petition requirements as mandatory rather than directory. In its second point of error, the City contends the trial court erred in failing to give sufficient deference to the will of the voters by focusing on the me-

v. *State Farm County Mut. Ins. Co. of Tex.*, 972 S.W.2d 774, 777 (Tex.App.—Corpus Christi 1998, no writ) (same).

**60.** Also under this point of error, the City challenges the trial court's finding that the repeal petitions did not contain the language required by section 174.053(b) of the local government code. *See* Tex. Local Gov't Code Ann. § 174.053(b) (Vernon 1999). However,

in light of our conclusion that the petition forms did not contain the language required by the Sherman City Charter, our review of this contention is unnecessary. *See* Tex.R.App. P. 47.1.

**61.** Sherman City Charter art. IX, § 4.

**62.** *Id.* art. IX, § 5.

chanics of the petition process. We will address these points of error together.

We have already concluded that the provisions of chapter 277 of the Texas Election Code and provisions of the Sherman City Charter apply to the petitions prepared in this repeal election to the extent they do not conflict with chapter 174 of the Texas Local Government Code. The applicable statutes and the city charter set forth the petition requirements in mandatory language. For example, section 277.0023 of the election code unequivocally states "a petition *may not* be supplemented, modified, or amended on or after the date it is received by the authority with whom it is required to be filed...."[63] Section four of the city charter provides "[i]nitiative petition papers *shall contain* the full text of the proposed ordinance" and on each petition "there *shall appear* ... the names and addresses of five (5) electors."[64] When interpreting statutes, we are directed to give words their ordinary meaning.[65]

Despite the plain language of the applicable provisions of law and the city charter, the City argues the mechanics of the petition process are largely irrelevant after the election has taken place; therefore, we should treat the petition requirements as directory only. According to the City, when election requirements are directory, substantial compliance with the law is all that is required.[66]

Courts are to construe the provisions that relate to voters as directory whereas the provisions which relate to what is required of candidates are mandatory.[67] The rationale for the differing rules is that the right to vote is fundamental while the right to hold office is in the nature of a privilege.[68] Most of the cases in this area address whether laws proscribing the conduct of the election at the polls are mandatory or directory.[69] However, in the instant case, the provisions at issue do not relate to the mechanics of voting or the right of an individual citizen to cast a ballot; rather, these provisions set out the requirements for properly calling an election.[70] As such, these provisions are more analogous to requirements for candidates to get on the ballot, which repeatedly have been held mandatory and therefore require strict compliance.[71] Accordingly, we conclude the trial court properly treated the petition requirements of chapter 277 of the election code and the city charter as mandatory.

Moreover, even accepting the City's argument that the provisions of chapter 174 of the local government code, chapter 277 of the election code, and the city charter are directory only, the record shows the City did not substantially comply with the applicable petition requirements. "Substantial compliance" does not mean literal and exact compliance with every provision of a statute. If the statu-

63. Tex. Elec.Code Ann. § 277.0023 (Vernon Supp.1999) (emphasis added).

64. Sherman City Charter art. IX, § 4 (emphasis added).

65. See Tex. Gov't Code Ann. § 312.002 (Vernon 1998).

66. See Holt v. Trantham, 575 S.W.2d 83, 86 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.).

67. See Geiger v. DeBusk, 534 S.W.2d 437, 439 (Tex.Civ.App.—Dallas 1976, no writ).

68. McWaters v. Tucker, 249 S.W.2d 80, 82 (Tex.Civ.App.—Galveston 1952, no writ).

69. See, e.g., Setliff v. Gorrell, 466 S.W.2d 74, 79 (Tex.Civ.App.—Amarillo 1971, no writ) (whether fact that polls opened at 8:00 a.m. rather than 7:00 a.m. invalidated election); Wooley v. Sterrett, 387 S.W.2d 734, 741–43 (Tex.Civ.App.—Dallas 1965, no writ) (whether various irregularities in conduct at polls invalidated election).

70. See Countz v. Mitchell, 120 Tex. 324, 332, 38 S.W.2d 770, 773 (1931) (right to hold election depends on authority conferred by law); Williams v. Glover, 259 S.W. 957, 960 (Tex.Civ.App.—Waco 1924, no writ) (same).

71. Wallace v. Howell, 707 S.W.2d 876, 877 (Tex.1986); Bejarano v. Hunter, 899 S.W.2d 346, 349 (Tex.App.—El Paso 1995, no writ).

tory mandate is followed sufficiently to reasonably carry out the intent and purpose of the statute, substantial compliance will be deemed to have occurred.[72] However, the record shows the City completely failed to comply with several of the petition requirements, and these deficiencies were apparent on the face of the petitions. No single petition form contained a sufficient number of signatures to vest the city council with the authority to call the May 6 repeal election. Likewise, none of the petition forms contained the full language of the proposed ordinance to be voted upon, and the forms contained different committees of five electors.

■ Substantial compliance with an election requirement cannot exist when there has been a complete lack of compliance and the purpose of the requirement has not been fulfilled. In this case, the defects were substantial and were apparent on the face of the petitions.[73] Thus, the petitions were insufficient to confer authority on the City to call the May 6 repeal election. We conclude the trial court correctly found the May 6 repeal election was void.[74] We overrule the City's second and third points of error.

In its fourteenth point of error, the City contends that the trial court erred in setting aside the results of the May 6, 1995 repeal election and in enjoining the City from giving effect to the results of that election. We have already determined the trial court did not err in concluding the repeal election was void. Accordingly, we overrule the City's fourteenth point of error.

## ATTORNEY'S FEES

In its fifteenth point of error, the City contends the trial court erroneously awarded attorney's fees under the declaratory judgments act. The City's sole contention under this point is that, because suit could only be brought as an election contest and could not be maintained as a declaratory judgment action, there is no statutory basis for the trial court's award of attorney's fees. We have already held this suit could be maintained as a declaratory judgment action. Under the declaratory judgments act, the trial court may, in its discretion, award costs and reasonable attorney's fees "as are equitable and just."[75] Accordingly, we conclude the trial court did not err in awarding attorney's fees to the police and firefighters. We overrule the City's fifteenth point of error.

Because we have concluded the trial court correctly held the May 6 repeal election was void because the City was without authority to order the election, we need not address the City's remaining points of error eight through twelve challenging the trial court's findings on the validity of the circulator's affidavits. We also need not address the City's thirteenth point of error challenging the trial court's determination that police and firefighters have a protectable due process right in maintaining the collective bargaining system.[76]

We affirm the trial court's judgment.

**72.** *See Santos v. Guerra,* 570 S.W.2d 437, 440 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

**73.** *See West End Rural High Sch. Dist.,* 221 S.W.2d at 780.

**74.** *See id.* at 779.

**75.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997).

**76.** *See* Tex.R.App. P. 47.1.