# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00323-CV

**City of Granite Shoals, Pat Crochet, John Gault, David Dittmar, Bessie Jackson, Shirley King, and Merilyn Nations, Appellants**

**v.**

**Ted Winder, Jamie Parker, Beaver Island Property Owners Association, Denis Snyder, and Ted O. Kostich, Appellees**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 32649, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## O P I N I O N

Appellants City of Granite Shoals, Pat Crochet, John Gault, David Dittmar, Bessie Jackson, Shirley King, and Merilyn Nations (collectively, the "City") bring this interlocutory appeal of the trial court's order denying their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008). Appellees (collectively, the "property owners") sued the City for declaratory relief, challenging the City's conversion to a home-rule municipality under article XI, section 5 of the Texas Constitution and its subsequent annexation of the subdivisions in which the individual appellees own property. We will affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

The individual appellees are property owners from the subdivisions of Beaver Island and Web Isle, which sit adjacent to the City on Lake LBJ in Burnet County, Texas. In 2004, the City, then a general-law municipality, annexed Beaver Island and Web Isle pursuant to its authority under section 43.033 of the local government code.[1] *See* Tex. Loc. Gov't Code Ann. § 43.033(a)(1)-(7) (West 2008) (providing conditions under which general-law municipality may annex adjacent territory without consent of property owners). The following year, the City Council adopted ordinances allowing it to draft a home-rule charter and to call an election for the City to incorporate as a home-rule city.[2] *See id.* §§ 9.001-.003 (West 2008). Under the home-rule provision in article XI, section 5 of the Texas Constitution, cities "having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters." *See* Tex. Const. art. XI, § 5. The election took place November 8, 2005. A majority of the voters approved the charter, thereby converting the City from a Type A general-law municipality to a home-rule municipality.

On December 22, 2005, more than a year after the City annexed Beaver Island and Web Isle pursuant to its authority as a general-law municipality, a majority of the property owners

---

[1] In their briefs, the parties reference an extensive history of annexations and disannexations involving these properties prior to the 2004 annexation; however, we will confine our discussion to the events that directly led to this appeal.

[2] Ordinance No. 427 states that a committee will be appointed to draft the City's home-rule charter, that the charter "will be presented to the Council as soon as the City reaches 5,000 in population," and that the charter will then be put before the citizens of the City for a vote. After the charter was drafted, the Council adopted Ordinance No. 441, ordering that a special election be held for the purpose of incorporating the City as a home-rule municipality.

in those communities submitted petitions for disannexation. *See* Tex. Loc. Gov't Code Ann. § 43.033(b) (providing that majority of landowners in area may petition general-law municipality for disannexation after one year but before three years from passage of annexation ordinance). Therefore, the City was required to disannex Beaver Island and Web Isle, *see id.* (providing that "the municipality shall immediately disannex the area" upon landowners' submission of petition for disannexation), which it did on January 17, 2006.[3]

In April 2006, the City, now acting as a home-rule municipality, again proposed to annex Beaver Island and Web Isle, issuing notice to the property owners of its intent to annex these and several other subdivisions in the area. The local government code provides that a home-rule municipality may "extend the boundaries of the municipality and annex area adjacent to the municipality." *Id.* § 43.021(2). The statute does not contain a provision allowing residents to petition home-rule municipalities for disannexation; therefore, once the City annexed Beaver Island and Web Isle pursuant to its authority as a home-rule municipality, a majority of the residents could not petition to force the City to disannex their territories as they had previously when the City was a general-law municipality.

After holding two public hearings on the proposed annexations, the City Council adopted Ordinance Nos. 462 (Beaver Island) and 466 (Web Isle), describing and annexing both territories. Thereafter, the property owners filed suit for declaratory judgment, seeking declarations

---

[3] Among the property owners' complaints is their assertion that the City intentionally delayed in acting on their petitions for disannexation, thereby wrongfully subjecting them to the City's taxes for the 2006 tax year because their properties were listed on the City's tax rolls on January 1, 2006.

that certain specified actions by the City Council—(1) City Council Ordinance No. 441, which had called for the home-rule election; (2) the home-rule election itself, held November 8, 2005; and (3) the annexations of Beaver Island and Web Isle—were all "null and void" because "the City of Granite Shoals does not have more than 5,000 inhabitants and is not eligible to become home rule under the Constitution and laws of Texas." The property owners sought further declarations that the disannexations of Beaver Island and Web Isle became effective December 22, 2005; that they are entitled to a refund for the 2006 property taxes paid to the City; and that the City "acted willfully, fraudulently, in bad faith, and/or abused their discretion as public officials in determining the population of Granite Shoals during 2005."

The City answered and filed a plea to the jurisdiction and special exceptions, asserting that the trial court lacked subject-matter jurisdiction over the suit. Specifically, the City argued that (1) the property owners' claim that they are entitled to a tax refund was not yet ripe because they prematurely filed suit in violation of section 43.148 of the local government code; (2) the property owners lacked standing to bring their procedural challenges to the 2006 annexation because they should have been brought either in an election contest or by the State in a quo warranto action; and (3) the property owners lacked standing to challenge the City's home-rule conversion because, as non-residents of the City, they had failed to establish a "special interest or injury" resulting from the conversion.

After a hearing on the City's plea, but before the trial court ruled on it, the parties filed cross-motions for partial summary judgment, reurging their arguments regarding the questions of subject-matter jurisdiction and standing. Much of the evidence attached to their motions

4

addressed the issue of whether the City had acted fraudulently or in bad faith in determining its population, thereby permitting the plaintiffs to challenge the City's home-rule conversion on the basis that it was void ab initio, rather than merely voidable. Following a hearing on the cross-motions for summary judgment, the trial court issued an order denying the City's plea to the jurisdiction and making the following findings of fact:

1. The Plaintiffs were residents of the City of Granite Shoals at the time of the home rule election, and therefore, have standing to contest the home rule conversion of the City of Granite Shoals;

2. The Plaintiffs have standing to contest the home rule conversion of the City of Granite Shoals by virtue of the re-annexation of Beaver Island and Web Isle on May 26, 2006, and the fact that said re-annexations are predicated on the City of Granite Shoals being a valid home rule municipality;

3. The Summary Judgment evidence presented by Plaintiffs indicates that a fact finder could find that the required 5,001 inhabitants determination was made in bad faith or by constructive fraud in which event the home rule conversion would be void, and private citizens would have standing to contest this conversion; and

4. Plaintiffs' challenge to the City of Granite Shoals' conversion to home rule is not the type of action that must be brought as an "election contest" proceeding as contemplated by Section 221.003 of the Texas Election Code.

The City now appeals the denial of its plea to the jurisdiction. *See* Tex. Civ. Prac.& Rem. Code Ann. § 51.014(a)(8).

## STANDARD OF REVIEW

We review the denial of a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In deciding a plea to the

5

jurisdiction, we may not weigh the merits of the plaintiff's claims, but must consider only the plaintiff's pleadings, construed in the plaintiff's favor, as well as evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The supreme court has recognized that in some cases disputed evidence of jurisdictional facts also implicates the merits of the case; such disputed facts may require resolution by the finder of fact. *See Miranda*, 133 S.W.3d at 226. Only if the pleadings and jurisdictional evidence affirmatively and conclusively negate the existence of jurisdiction should a plea to the jurisdiction be granted. *Id.* at 227.

When a plea to the jurisdiction challenges the pleadings, we first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* at 226 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 226-27 (citing *Brown*, 80 S.W.3d at 555). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by

6

the fact finder. *Id.* at 227-28. If, however, the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard generally mirrors that of a traditional summary judgment under Texas Rule of Civil Procedure 166a(c). *Id.* Therefore, when reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that also implicates the merits of the case, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

## DISCUSSION

The City brings two issues on appeal. In its first issue, the City argues that the trial court lacked subject-matter jurisdiction over the property owners' challenge to the home-rule charter election because they did not file their lawsuit as an election contest under chapter 221 of the election code. In its second issue, the City asserts that a challenge to a city's conversion to home rule must be brought by the State through a quo warranto proceeding except in cases of fraud or bad faith. The City argues that its plea to the jurisdiction should have been granted because the property owners' jurisdictional evidence failed to raise a fact question regarding whether the City acted fraudulently or in bad faith in determining that its number of inhabitants exceeded five thousand.

### *Election Contest*

According to the City, the property owners' challenge to the calling of the home-rule election and subsequent conversion to home rule was required to be brought as an election contest. In so arguing, the City relies on the Fort Worth Court of Appeals' decision in

*State ex rel. Kimmons v. City of Azle*, 588 S.W.2d 666 (Tex. App.—Fort Worth 1979, writ ref'd n.r.e.). There, the State attacked the city's "corporate existence, including its existence as a home rule city" on the basis that the city did not have at least 5,000 inhabitants at the time of the election, rendering the home-rule conversion void. *Id.* at 667. The trial court awarded summary judgment in favor of the City of Azle upon its conclusive showing that it had been duly incorporated in accordance with the governing statutes. *See id.* The court of appeals agreed that the City of Azle had met its summary-judgment burden, noting that the record contained "several validation Acts by the Legislature," which "validated Azle's incorporation and annexations" and by which the State was bound. *Id.* at 669.

Regarding the State's contention that the city's determination of its population was made in bad faith, the court of appeals held in *City of Azle*:

> In the case before us the summary judgment evidence of Azle suffices to establish regularity of the election on April 3, 1971. In other words its evidence establishes its compliance with the requisite (if to be deemed as required) that it have the sufficient qualification by population for a valid election on the home rule amendment.

*Id.* at 670. The court went on to state that "if there be contests of validity and regularity in instances of elections to adopt the home rule amendment," such questions must be litigated as election contests under article 9.30 of the Texas Revised Civil Statutes. *Id.* It is this language that the City here relies on in asserting that the property owners were required to bring their challenge to the City's home-rule conversion as an election contest.

8

As the City acknowledges, the court's interpretation of article 9.30 in *City of Azle* was subsequently criticized by the Eastland Court of Appeals in *State ex rel. City of Weatherford v. Town of Hudson Oaks*, 610 S.W.2d 550 (Tex. App.—Eastland 1980, writ ref'd n.r.e.). *Hudson Oaks* involved a challenge to the town's municipal incorporation. The trial court rejected the plaintiffs' claims on the ground that their challenge was not filed within the thirty days of the election, a procedural requirement for bringing an election contest under article 9.30. *Id.* at 550. The court of appeals reversed, holding that a suit to determine whether a municipality had proper authority to seek incorporation "is not an election contest" because such a determination "is not within the scope of an election contest" under the statute. *Id.* at 551. In so holding, the *Hudson Oaks* court stated that it "was not persuaded by the dicta expressed in *State ex rel. Kimmons v. City of Azle*" suggesting otherwise. *Id.* at 551 (citations omitted).

Both of these decisions were predicated on former article 9.30 of the revised civil statutes, which governed "Other contested elections." *See* Act of May 28, 1951, 52d Leg., R.S., ch. 492, 1951 Tex. Gen. Laws 1097, 1151-60. That statute provided:

> If the contest be for the validity of an election held for any other purpose than the election of an officer or officers in any county or part of a county or precinct of a county, or in any incorporated city, town, or village, any resident of such county, precinct, city, town, or village, or any number of such residents, may contest such election in the district court of such county in the same manner and under the same rules, as far as applicable, as are prescribed in this chapter (arts. 9.01-9.38) for contesting the validity of an election for a county office.

*Id.*; *see Hudson Oaks*, 610 S.W.2d at 550 n.2. The disagreement between the *City of Azle* and *Hudson Oaks* courts concerned whether a challenge to a city's municipal incorporation is a contest

to the "validity" of an election. This is a question we need not decide because, in this case, the statute in effect at the time the property owners' claims arose is substantially different. The current statute narrowly defines an "election contest" as an inquiry concerning

> whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because: (1) illegal votes were counted; or (2) an election officer or other person officially involved in the administration of the election: (A) prevented eligible voters from voting; (B) failed to count legal votes; or (C) engaged in other fraud or illegal conduct or made a mistake.

Tex. Elec. Code Ann. § 221.003 (West 2003). Therefore, a challenge that does not concern whether the outcome of the election was incorrect for one of the four reasons listed in the statute is, by definition, not an election contest.

Texas courts have long recognized that an election contest is not an ordinary lawsuit, but is instead "a special legislative proceeding." *Rossano v. Townsend*, 9 S.W.3d 357, 361 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see Duncan v. Willis*, 302 S.W.2d 627, 630 (Tex. 1957); *De Shazo v. Webb*, 113 S.W.2d 519, 523 (Tex. 1938);. In an election contest, a district court's authority to act is limited to the subjects or grounds expressly or impliedly authorized by the election code. *See* Tex. Elec. Code Ann. § 221.003; *Rossano*, 9 S.W.3d at 361; *Cohen v. Clear Lake City Water Auth.*, 687 S.W.2d 406, 407 (Tex. App.—Houston [14th Dist.] 1985, no writ). The determination of whether a city has the authority to hold an election at all "is not within the scope of an election contest." *City of Kingsville v. Int'l Ass'n of Firefighters*, 568 S.W.2d 397, 399 (Tex. Civ. App.—Corpus Christi 1978, no writ); *see McCall v. Lewis*, 263 S.W. 325, 327 (Tex. Civ. App.—Austin 1924, no writ). Rather, the allegation that a city has no statutory authority to hold an

election "falls within the ambit of the declaratory judgments act." *Commissioners' Court v. Rayburn*, 264 S.W.2d 552, 555 (Tex. Civ. App.—Beaumont 1954, no writ); *see also City of Sherman v. Hudman*, 996 S.W.2d 904, 912 (Tex. App.—Dallas 1999, pet. granted, judgm't vacated w.r.m.).

Because the property owners' suit for declaratory judgment does not raise any of the issues that must be resolved in an election contest, we hold that they were not required to bring their challenge as an election contest under section 221.003. We overrule the City's first issue.

### Quo Warranto

In its second issue, the City argues that the property owners lacked standing to contest the City's conversion to home rule because, unless the conversion was void ab initio, such a challenge had to be brought by the State in a quo warranto proceeding.[4] In so arguing, the City asserts that its own determination that its number of inhabitants exceeded 5,000 should be given almost total deference and that, contrary to the trial court's finding, the property owners' jurisdictional evidence failed to create a fact question concerning whether the City acted fraudulently or in bad faith in making that determination.

---

[4] It is well established that private parties have standing in cases involving attacks on municipal incorporations and annexations only when the action complained of is void, rather than merely voidable, because the municipality exceeded its authority. *See, e.g.*, *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 438 (Tex. 1991); *City of West Lake Hills v. State ex rel. City of Austin*, 466 S.W.2d 722, 727 (Tex. 1971); *Gonzales v. Concerned Citizens of Webberville*, 173 S.W.3d 112, 115-16 (Tex. App.—Austin 2005, no pet.); *City of Northlake v. East Justin Joint Venture*, 873 S.W.2d 413, 417 (Tex. App.—Fort Worth 1994, writ denied); *City of Willow Park v. Bryant*, 763 S.W.2d 506, 508 (Tex. App.—Fort Worth 1988, no writ); *Durham v. Crutchfield*, 578 S.W.2d 438, 440 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.).

A municipality's fact-finding powers are not absolute, however, nor are its determinations entitled to conclusive deference, a point the City itself acknowledges. In deciding that a city "is properly empowered" to determine its eligibility to adopt a home-rule charter, the Texas Supreme Court has recognized that

> when the governing body once ascertained the fact that [the city] had a population of more than 5000 at the time of the adoption of its Home-Rule Charter, such ascertainment is presumed to have been validly exercised in the absence of allegations and of proof of *fraud, bad faith or abuse of discretion*.

*State ex rel. Rose v. City of La Porte*, 386 S.W.2d 782, 785 (Tex. 1965) (citing *Town of Freeport v. Sellers*, 190 S.W.2d 813 (Tex. 1945); *Williams v. Castleman*, 247 S.W. 263 (Tex. 1922)) (emphasis added). Thus, while a municipality's administrative determination of a predicate fact question prior to the ordering of an election "is intended to be final," that determination may be set aside "on the ground of fraud or bad faith." *Harrison v. Bunnell*, 420 S.W.2d 777, 779 (Tex. Civ. App.—Austin 1967, no writ) (quoting *School Board v. State*, 343 S.W.2d 247, 248 (Tex. 1961)).[5]

---

[5] We held in *Harrison v. Bunnell* that the municipality's determination may be attacked only on the grounds of fraud or bad faith and not on mere allegations that the municipality's actions were arbitrary, capricious, or unreasonable. *See* 420 S.W.2d 777, 779 (Tex. Civ. App.—Austin 1967, no writ). In the present case, the City erroneously argues that, "[j]ust like the unsuccessful plaintiffs in *Harrison*, Plaintiffs in this case alleged that the city council's determination regarding the number of the City's inhabitants was made fraudulently, in bad faith, and was an abuse of discretion." On the contrary, the plaintiffs in *Harrison* alleged only that the defendants' conduct was "arbitrary, capricious and unreasonable"—not that they had acted fraudulently or in bad faith. *Id*; *cf. Bute v. City of League City*, 390 S.W.2d 811, 814 (Tex. Civ. App.—Houston [1st Dist.] 1965, no writ) ("Appellants in the instant case have not alleged that League City or its governing body were actuated by fraud, bad faith, or abuse of discretion, and hence the population determination was lodged with the governing body of the City . . . .").

12

Extrapolating from these decisions, the property owners assert that the existence of fraud or bad faith renders a municipality's incorporation wholly void, rather than merely voidable, thereby conferring standing on private parties to collaterally attack the decision outside of a quo warranto proceeding. *See, e.g.*, *Lum v. City of Bowie*, 18 S.W. 142, 144 (Tex. 1891) ("The proceedings by means of which it was attempted to annex the land of appellants were, we think, void, and not mere irregularities, and the rule is familiar that void acts may be questioned collaterally."); *City of Galena Park v. City of Houston*, 133 S.W.2d 162, 164-65 (Tex. Civ. App.—Galveston 1939, writ ref'd) (when attempted incorporation was collaterally attacked as "wholly invalid and void," contestant could proceed "without the joinder of the State under a writ of quo warranto") (citing *City of Port Arthur v. Gaskin*, 107 S.W.2d 610 (Tex. Civ. App.—Beaumont 1937, no writ) (holding that State is necessary party only when action "is merely voidable"), and *Hunt v. Atkinson*, 12 S.W.2d 142 (Tex. Comm'n App. 1929, judgm't adopted) (declining to adopt quo warranto requirement in case involving municipal annexation that was completely void)).

We agree with the property owners that void acts may be collaterally attacked outside of a quo warranto proceeding. *See City of Irving v. Callaway*, 363 S.W.2d 832, 835 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.), and cases cited therein. The question presented here is whether the City's allegedly fraudulent or bad-faith determination that it had the requisite number of inhabitants and therefore was eligible to call a home-rule election would, if true, render the election itself and the City's subsequent conversion to home-rule wholly void or merely voidable. As this Court has recognized,

13

> Defects in the incorporation process which render the incorporation absolutely void are limited to allegations: (1) that the act of incorporation itself was either prohibited or unauthorized by law; (2) that the purported incorporation was pursuant to an unconstitutional statute; or (3) that the attempt to comply with the provisions of the law authorizing the creation of such municipality was so utterly lacking or defective as to render the attempt to create such corporation void.

*Gonzales v. Concerned Citizens of Webberville*, 173 S.W.3d 112, 115-16 (Tex. App.—Austin 2005, no pet.) (citing *Durham v. Crutchfield*, 578 S.W.2d 438, 441 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.)). Put differently, "[i]f a governmental entity was wholly without authority to call an election, the election held pursuant to such an order is void." *Hudman*, 996 S.W.2d at 911; *see Derrick v. County Bd. of Educ.*, 374 S.W.2d 259, 264 (Tex. Civ. App.—Amarillo 1963, writ dism'd w.o.j.) ("In cases where the body essaying to exercise the power of organization or annexation does so without jurisdiction, its action is void, and may be collaterally attacked . . . ."). The property owners urge that the City's inhabitancy determination was tainted with fraud or bad faith and therefore the calling of the election was either constitutionally impermissible or its attempt at compliance with the law authorizing the incorporation was so defective as to render the act void.

Despite the dearth of authority explicitly stating that fraud or bad faith in the predicate fact-finding will render the municipality's incorporation wholly void, both parties have characterized such allegations as "exceptions" to the quo warranto requirement. A case supporting that view is *Bute v. City of League City*, 390 S.W.2d 811, 814 (Tex. Civ. App.—Houston [1st Dist.] 1965, no writ). In *Bute*, the plaintiffs alleged two grounds for declaring the city's incorporation ordinance void, thereby permitting them to bring suit in their individual capacities: (1) that League City "did not have more than 5,000 inhabitants as required by the Constitution," and (2) that the city had

14

attempted to incorporate non-adjacent lands in violation of the governing statutes permitting incorporation. *Id.* at 813. The court of civil appeals stated, "We would agree with appellants if on the hearing of the plea in abatement the trial court had not impliedly found against them with respect to both of such alleged grounds for declaring the ordinance void." *Id.* But because the evidence did not support the plaintiffs' allegations and they had not alleged that the city "or its governing body were actuated by fraud, bad faith or abuse of discretion," the court affirmed the trial court's dismissal of their action. *Id.* at 814. In so doing, the court reiterated that the plaintiffs' assertions of fraud and bad faith, "if established, would render the ordinance void. Had the trial court found in their favor with respect to such grounds, they could have prosecuted their suit in their individual capacities." *Id.* at 815. As the court of civil appeals reasoned, a quo warranto action would not have been necessary because the "State would not have been in any better position to attack the ordinance in such event than were appellants and hence there would be no reason for quo warranto proceedings." *Id.*

We conclude that a challenge to an inhabitancy finding based on fraud or bad faith implicates voidness rather than voidability. The distinction between the two depends on whether the municipal act is "unauthorized by law or color of law" or, on the other hand, is "a mere irregular exercise of power." *City of San Antonio v. Hardee*, 70 S.W.3d 207, 210 (Tex. App.—San Antonio 2001, no pet.); *see City of Balch Springs v. George F. Lucas Irrevocable Family Trust*, 101 S.W.3d 116, 119-20 (Tex. App.—Dallas 2002, no pet.). In the present case, appellees do not complain of a mere irregularity, but instead challenge the City's fundamental authority to call a home-rule election and thereafter convert to home-rule—issues that bear on the

15

City's existence as a home-rule municipality from its inception. *See Hudman*, 996 S.W.2d at 911; *Durham*, 578 S.W.2d at 441; *Derrick*, 374 S.W.2d at 264; *Callaway*, 363 S.W.2d at 835. Specifically, they assert that the City violated the Texas Constitution by calling the election when it had fewer than the requisite 5,000 inhabitants, that its determination to the contrary was made fraudulently or in bad faith, and that because the City lacked the authority to adopt the ordinance calling the election, "the election held pursuant to such an order is void." *See Hudman*, 996 S.W.2d at 911; *see also Todd v. Helton*, 495 S.W.2d 213, 216 (Tex. 1973) ("an order calling an election to organize a county may be annulled upon discovery of fraud") (citing *Oden v. Barbee*, 129 S.W. 602, 603 (Tex. 1910)).

Our decision on this question is consistent with the public policy behind the quo warranto requirement and the rule prohibiting collateral attack upon existing municipal corporations, as that policy has been examined by the Texas Supreme Court:

> The rule itself [forbidding collateral attack on existing corporations] is well recognized and rests upon the soundest public policy. But an examination of the numerous cases supporting it will show that it applies only in those instances where the corporation attacked is at least a *de facto* corporation by virtue of an attempted organization under "color of law". . . . Before an attempted organization can be said to be under "color of law", there must have been a good faith attempt to organize in the method prescribed by existing law, and at least a colorable compliance with that law.

*Hunt*, 12 S.W.2d at 145 (internal citations omitted). The supreme court has held that the rule requiring quo warranto is not absolute, but is founded in "convenience, merely, and is not to be so applied as to defeat the assertion of just legal rights by parties in the courts." *Parks v. West*, 111 S.W. 726, 729 (Tex. 1908). *Parks* involved a challenge to the corporate existence of a school district

16

by a group of property owners within its boundaries. *Id.* at 728-29. The court, while recognizing that the district had been formed in substantial compliance with the law and had been acting as a de facto corporation, nevertheless permitted taxpayers to bring suit outside of a quo warranto action, noting that

> the attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have a right to do that, although the reason they assign for the lack of power may also go to the right of the district to exist under the Constitution. . . . Useful and convenient as is the doctrine invoked, we can not now give our assent to an application of it which would deny to the plaintiffs the protection sought of their property rights.

*Id.* at 729; *see also Walling v. North Cent. Tex. Mun. Water Auth.*, 348 S.W.2d 532, 533 (Tex. 1961) (approving *Parks* and affirming taxpayers' right to maintain suit against water authority for recovery of taxes on ground that statute creating authority was unconstitutional).

Having decided that the property owners' pleadings assert claims that could be brought outside of a quo warranto proceeding by the State, we must now consider whether the jurisdictional evidence in this record conclusively negates those facts that would produce the existence of jurisdiction. *See Miranda*, 133 S.W.3d at 227. In other words, if the evidence *conclusively* established that the City did *not* act with fraud and bad faith, then the City's determination of its number of inhabitants is presumptively valid and the property owners' challenge to the validity of the election would fail. Because the question of whether the property owners, as individuals, have standing to bring suit against the City depends on whether the City acted fraudulently or in bad faith in calling the election, this is a case in which the jurisdictional challenge

17

squarely implicates the merits of the plaintiffs' cause of action. In these circumstances, "after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue."[6] *Miranda*, 133 S.W.3d at 228. This protects plaintiffs from having to put on their case simply to establish jurisdiction. *Id.* Unless the evidence conclusively shows an absence of jurisdiction, the disputed evidence regarding the jurisdictional facts that implicates the merits of the case will usually require resolution by the trier of fact, thereby giving the trial court the discretion to defer resolution of the jurisdictional issue. *Id.* at 226. In this case, the trial court made an express finding that "a fact finder could find that the required 5,001 inhabitants determination was made in bad faith or by constructive fraud in which event the home rule conversion would be void, and private citizens would have standing to contest this conversion." Therefore, under *Miranda*, the trial court properly acted within its discretion by deferring resolution of the ultimate jurisdictional facts unless the City conclusively established that it did not act fraudulently or in bad faith in determining that it had more than 5,000 inhabitants.

From our review of the jurisdictional evidence, we conclude that the property owners raised more than a scintilla of evidence that the City acted with bad faith in determining that it met the inhabitancy requirement for calling a home-rule election. The courts have not defined "bad

_____

[6] In order for this procedure truly to mirror traditional summary judgment procedure, the state's initial burden must be to support its plea not merely with *some* evidence that the trial court lacks jurisdiction, but with *conclusive* evidence on the jurisdictional issue. *See Maan v. First ATM, Inc.*, No. 03-06-00698-CV, 2008 Tex. App. LEXIS 9279, at *12 (Tex. App.—Austin Dec. 12, 2008, no pet.) (mem. op).

faith" in this specific context, but in passing on the validity of municipal ordinances have inquired into the "good faith" motives of those enacting them and the extent to which their actions are in furtherance of the policies of this State. *See City of San Antonio v. Wallace*, 338 S.W.2d 153, 156-57 (Tex. 1960) (holding that action of city legislative body may be judicially examined in light of its surrounding circumstances, prior and subsequent actions of such legislative body, and public policy in order to determine good faith of questioned action).[7]

In the present case, the property owners produced evidence from which a reasonable juror could conclude that (1) the method that the City used in making that determination was wilfully manipulated in order to produce the desired figure, or (2) the determination was reached despite—or in conscious disregard of—evidence that the City's actual inhabitancy figure was far below 5,000. Accordingly, as further discussed below, there is more than a scintilla of evidence that the City failed to make a good-faith effort to comply with the inhabitancy requirement imposed by the constitution, and in fact sought to contravene that requirement.

Regarding the methods that the City employed in order to determine its inhabitancy figure, then-mayor Pat Crochet testified that she personally counted the number of residential structures within the City and multiplied that number by three, which she estimated to be a reasonable persons-per-household multiplier. This method indicated a total of only

---

[7] This approach is consistent with the concept of bad faith in other areas of law. *See, e.g.*, *Citizens Bridge Co. v. Guerra*, 258 S.W.2d 64, 69-70 (Tex. 1953) (equating "bad faith" to actions based on improper motives or wilful disregard of facts in commercial paper context); *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.) (holding that improper motive is element of bad faith); *see also In re Barr*, 13 S.W.3d 525, 534 (Tex. Rev. Trib. 1998, pet. denied) (noting that official's intent to use office to accomplish purpose that was beyond exercise of legislative grant of authority "may in and of itself constitute bad faith").

4,656 inhabitants. When asked whether the city council considered any other type of method to determine its number of inhabitants, council member Merilyn Nations testified that she personally investigated the number of households in the City. Nations testified:

Q. And what did you determine, as far as households go?

A. Confident. I felt confident that we were qualified in pursuing the Home Rule.

Q. Did you make a determination as to the number of households?

A. No, not exact number.

Ultimately, however, the City's determination that it had the requisite number of inhabitants appears to have been the result of calculations based on its total number of in-city utility connections. Crochet testified that she contacted the Texas Municipal League and consulted their publication entitled *Texas Home Rule Charters*, which recommends a number of ways for a city to determine its inhabitancy figure. Among these is the suggestion to "use utility connections with a multiplier." A representative from the League explained this method in the following way: "[T]his means the city would find out the number of utility connections within the city and then multiply that number by the average number of individuals per house receiving utility services." Crochet purportedly adopted this approach, counting the number of "water taps" (1,675) and again multiplying that number by a multiplier of three, which provided a total of 5,025 inhabitants. Therefore, the City determined that it was eligible to call the home-rule election on the basis that it had 5,025 inhabitants.

Crochet admitted, however, that in performing her "water tap" calculation she did not distinguish between residential and commercial utility connections, but instead counted all of the taps within the city limits.[8] Similarly, Nations testified that the water tap figure of 1,675 represented all of the water taps within the city limits.

Nations further stated that, in order "to come up with this number" of 1,675 water taps, Crochet would have had to discount "other things," such as the meters of customers outside the city limits, but Nations did not inquire "as to whether or not the number of taps that serve people that do not live [in the City] permanently should be excluded." On this point, Nations testified:

A.     It's my understanding that there were other things that they—that she discounted to come up with this number . . . . I didn't ask what they were. All I cared about was the number and how it was acquired for my committee's purposes.

---

[8] Crochet testified as follows:

Q.     Did you make any discount for whether the meters fell within a certain rate code—rate code?

A.     No, sir.

Q.     Okay. So it didn't matter whether they were residential, commercial, governmental or whatever, if they were inside the city limits, you counted them?

A.     Yes.

Q.     And why was that?

A.     Because according to the Texas municipal law and procedures book, it says that you take the utility connections. It doesn't have anything in there about leaving out something and picking up something else. It just makes the flat statement that you use the utility connections.

Q.      You—you were mainly interested in that it was in excess of 5,000?

A.      Yes.

When asked why she decided to use 3.00 as the persons-per-household multiplier, Crochet answered that she had simply asked other municipalities what multiplier they used and selected one "in the middle." Crochet did not recall how many municipalities she contacted, or which others she spoke to apart from the city of Marble Falls.

Using the City's same utility information, the property owners produced contrary evidence that the City's inhabitancy figure was in fact much lower than 5,025. According to the property owners, the City had only 946 residential water taps within the city limits, which yielded an inhabitancy figure of 2,838, even using the City's persons-per-household multiplier of three. The property owners' evidence also included a number of official acknowledgments made by the City that its population was far less than 5,000. For example, the property owners point out that the City "represented to the U.S. Department of Justice by letter dated January 13, 2005" that it had a population prior to the annexations of Beaver Island and Web Isle of 3,870.

In addition, the property owners cited U.S. Census information and other data projections indicating that Granite Shoals's population in 2005 was or would be well below 5,000. According to the 2000 U.S. Census, the City's population was only 2,040, and the Census data projections estimated Granite Shoals's population to be 2,336 in the year 2005. Furthermore, the Census data indicated that the City's average household size was only 2.47. As the property owners point out, when 2.47 is used as the persons-per-household multiplier, rather than 3.00 as used by Crochet, the City's inhabitancy figures are even further below 5,000. Consistent with the Census

22

figures, the Office of the State Demographer estimated that the City's population was 2,302 as of July 1, 2005, and that the figure grew to 2,346 by January 1, 2006. Likewise, the Capital Area Council of Governments data projected the City's 2006 population to be 2,346, and the Texas Water Development Board predicted that the City's population will not exceed 5,000 until the year 2050.

We conclude that the property owners' evidence, which we must take as true and view in their favor, *see Miranda*, 133 S.W.3d at 228, raises a fact question regarding their allegation that the City did not act in good faith in determining that it was eligible to convert to home-rule. In particular, Nations's statement that she was only interested in whether the final number would exceed 5,000 could support an inference that the City was willing to accept data of dubious reliability, ignore contrary evidence, or manipulate the data to reach a desired result. Such evidence, coupled with the fact that only one of the three methods that the City's witnesses said they considered actually yielded an inhabitancy figure above 5,000, could indicate to a reasonable juror that the City did not exercise good faith in arriving at its final inhabitancy determination.

Because the City failed to conclusively negate the claims of fraud and bad faith, it has not shown that the property owners lacked standing to bring their claims outside of a quo warranto proceeding. We therefore hold that the trial court did not err in denying the City's plea to the jurisdiction, and we overrule the City's second issue.

## CONCLUSION

Having overruled the City's issues, we affirm the trial court's order denying the plea to the jurisdiction.

23

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   March 19, 2009