

## IN THE
## TENTH COURT OF APPEALS

### No. 10-22-00009-CV

WALKER COUNTY ESD NO. 3;
THE BOARD OF ESD NO. 3;
AND THE OFFICERS &
COMMISSIONERS OF ESD NO. 3,
IN THEIR OFFICIAL CAPACITIES,

          **Appellants**

 v.

CITY OF HUNTSVILLE, TEXAS,

          **Appellee**

---

**From the 278th District Court**
**Walker County, Texas**
**Trial Court No. 2130313**

---

## O P I N I O N

---

The City of Huntsville, Texas (the City) has sued Walker County Emergency

Services District (ESD) No. 3 (the District), along with its officers and commissioners, for

committing alleged *ultra vires* acts. The City seeks injunctive and declaratory relief in the

underlying case. The District and its officers and commissioners moved to dismiss the

City's lawsuit for lack of jurisdiction, which the trial court denied. The District and its officers and commissioners bring this interlocutory appeal challenging the denial of their motion to dismiss. We will reverse and render.

## Factual and Procedural Background

The City sued the District and its officers and commissioners on November 3, 2021, the day after voters of the District, along with voters residing in a territory to be annexed, approved the District's annexation of the new territory. According to the City, the new territory includes territory within the City's extraterritorial jurisdiction (ETJ); however, the City has never consented to its ETJ being annexed by the District.

In its lawsuit, the City complains that *ultra vires* acts have been committed by the District and its officers and commissioners. The City alleges that provisions of Chapter 775 of the Health and Safety Code require the District to obtain the City's consent before territory in the City's ETJ may be annexed by the District and that annexation without the City's consent violates controlling statutes. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 775.001–.306. The District and its officers and commissioners sought dismissal of the lawsuit in its motion to dismiss for lack of jurisdiction,[1] asserting that (1) the District and its officers and commissioners are immune from suit as a political subdivision of the state and (2) the City does not have standing to contest the results of the November 3,

---

[1] The motion to dismiss for lack of jurisdiction is in substance a plea to the jurisdiction regardless of the procedural vehicle used to advance it. *See City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017).

2021 election approving the annexation. The trial court denied the District's and its officers' and commissioners' motion to dismiss, and this appeal ensued.

**Issues**

In three issues the District and its officers and commissioners complain that the trial court erred in denying their motion to dismiss for lack of jurisdiction. More specifically, the District and its officers and commissioners contend:

1.  The trial court lacks subject matter jurisdiction over the City's claims against the District because the District is protected by governmental immunity.

2.  The trial court lacks subject matter jurisdiction over the City's claims against the individual commissioners because the *ultra vires* exception to their immunity from such suits and claims does not apply in this case.

3.  The trial court lacks subject matter jurisdiction because the City lacks standing to bring an election contest under the Texas Election Code.

**General Authority**

This Court has jurisdiction to review an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840–46 (Tex. 2007) (holding that section 51.014(a)(8) vests appellate courts with jurisdiction to consider interlocutory appeals of jurisdictional pleas brought both by governmental entities and by employees of such governmental entities who have been sued in their official capacities). A plea that questions a trial court's jurisdiction raises a question of law that we review *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction is a dilatory plea, filed to defeat a

cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has jurisdiction begins with an analysis of the plaintiff's live pleadings. *See Miranda*, 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing the trial court has subject matter jurisdiction. *See id.* at 226–27. Vague and conclusory statements within a pleading are insufficient to support jurisdiction; otherwise, the jurisdictional inquiry would become meaningless. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007). Mere unsupported legal conclusions do not suffice. *See Creedmoor–Maha Water Supply Corp. v. Tex. Comm'n on Env't Quality*, 307 S.W.3d 505, 515–16 & n.7 & n.8 (Tex. App.–Austin 2010, no pet.). In conducting our review, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Miranda,* 133 S.W.2d at 226–27.

## Issue Three

We begin by addressing the third issue in which the District and its officers and commissioners contend that the trial court does not have subject matter jurisdiction to the extent that the City has brought an election contest because the City lacks standing to do so. The City responds that it has not brought an election contest challenging the result of the election but an action seeking a declaration that the election is void because the District did not have the authority to order the election without obtaining the City's consent.

"An election contest is a special proceeding created by the Legislature to provide a remedy for elections tainted by fraud, illegality or other irregularity." *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999). "In an election contest, a district court's authority to act is limited to the subjects or grounds expressly or impliedly authorized by the election code." *City of Granite Shoals v. Winder*, 280 S.W.3d 550, 557 (Tex. App.—Austin 2009, pet. denied). A lawsuit seeking a declaration that the State or its subdivisions do not have the authority to hold an election is, however, not an election contest. *See id.* at 557–58.

DISCUSSION

The City's original petition asks among other requests for relief for a declaration that "the November 2, 2021 election held by [the ESD] was void and of no legal effect." The petition premises the City's claim that the election was void on the ground that the City did not consent to the annexation of municipal territory. The City's claim is therefore not an election contest. *See id.* We accordingly overrule this issue.

**Issue One**

In the first issue, the District contends that it is an entity protected by governmental immunity and, therefore, the trial court has no subject matter jurisdiction over claims by the City against the District. The City in its brief concedes that "[t]he City is no longer pursuing its claims against [the District] or the Board" and "is only seeking injunctive and declaratory relief against the individual commissioners in their official

capacity." We lack authority to render advisory opinions and the mootness doctrine limits courts to deciding cases in which an actual controversy exists. A controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

AUTHORITY

The District is a political subdivision of the state. *See* TEX. HEALTH & SAFETY CODE ANN. § 775.031. Political subdivisions of the state are entitled to governmental immunity unless it has been waived. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009). For the Legislature to waive the State's immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). Absent the state's consent to be sued, a trial court lacks subject matter jurisdiction. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) (quoting *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). Therefore, if a governmental entity is sued without legislative consent, the trial court should grant the governmental entity's plea to the jurisdiction. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).

DISCUSSION

In response to the District's motion to dismiss for lack of jurisdiction, the City argued that the District's governmental immunity was waived by the Legislature in section 775.031 of the Health and Safety Code, which states that an emergency services

district (ESD) may "sue and be sued." *See* TEX. HEALTH & SAFETY CODE ANN. § 775.031(a)(4). "We interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing TEX. GOV'T CODE ANN. § 311.034). The language "sue and be sued," standing alone, is unclear and ambiguous and, as such, does not amount to a waiver of governmental immunity. *Tooke v. City of Mexia*, 197 S.W.3d 325, 342 (Tex. 2006). We thus conclude that the Legislature has not waived the District's immunity from suit. *See id.* Furthermore, a suit seeking relief for *ultra vires* acts must be brought against the state actors in their official capacity, not against the governmental entity. *See Heinrich*, 284 S.W.3d at 373. The District, as a political subdivision of the state, is therefore entitled to and protected by governmental immunity, and the trial court lacks jurisdiction over the City's claims against the District. We sustain this issue.

**Issue Two**

In the second issue, the District's officers and commissioners contend that the City's claims that they committed *ultra vires* acts do not constitute an exception to governmental immunity. The District's officers and commissioners argue that the trial court therefore has no subject matter jurisdiction over the City's claims against them.

AUTHORITY

Even if a political subdivision's immunity has not been waived, "a claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in *ultra vires* conduct." *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). There are two general ways to prove an *ultra vires* claim: (1) commission of an action without legal authority or (2) failure to perform a purely ministerial act. *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017). An official with limited discretion to act under an applicable statute is subject to an *ultra vires* claim if it is alleged that the official exceeded the bounds of the granted authority or the official's conduct conflicts with the statute itself. *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). However, an official with absolute discretion to act is protected from *ultra vires* claims by governmental immunity. *Hall*, 508 S.W.3d at 241. "'*Ultra vires* claims depend on the scope of the state official's authority,' not the quality of the official's decisions." *Honors Acad.*, 555 S.W.3d at 68 (quoting *Hall*, 508 S.W.3d at 234). "Thus, it is not an *ultra vires* act for an official to make an erroneous decision within the authority granted." *Id.*

To determine if a plaintiff has pleaded a viable *ultra vires* action, the court must construe relevant statutory provisions that define the scope of the governmental body's legal authority, apply those statutes to the facts as pleaded by the plaintiff, and ascertain whether those facts constitute acts beyond the agency's legal authority. *City of New Braunfels v. Tovar*, 463 S.W.3d 913, 919 (Tex. App.—Austin 2015, no pet.).

"Statutory construction is a legal question, which is reviewed *de novo* to ascertain and give effect to the Legislature's intent." *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). It is this Court's duty to administer the law as it is written and not make the law. *In re G.A.C.*, 499 S.W.3d 138, 142 (Tex. App.—Amarillo 2016, pet. denied). "Our primary goal in construing a statute is to give effect to the Legislature's intent." *Shinogle v. Whitlock*, 596 S.W.3d 772, 776 (Tex. 2020) (per curiam). And "the truest manifestation of what lawmakers intended is what they enacted." *Tex. Student Hous. Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 141 (Tex. 2015). It is a bedrock principle that "[i]f a case can be decided according to the statute itself, it must be decided according to the statute itself." *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 78 (Tex. 2017). "We take statutes as we find them and construe them 'so that no part is surplusage, but so that each word has meaning.'" *Shinogle*, 596 S.W.3d at 776 (quoting *Perdernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017)). "The role of the judicial branch in our government is important but that role 'is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent.'" *In re Allen*, 366 S.W.3d 696, 708 (Tex. 2012) (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003)).

If the text of a statute is unambiguous, we must take the Legislature at its word, respect its policy choices, and not revise a statute under the guise of interpreting it.

*BankDirect*, 519 S.W.3d at 86; *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013). "[W]e do not consider legislative history or other extrinsic aides [sic] to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent." *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018). Reliance on extrinsic aids is improper and inappropriate when statutory language is clear. *Id*. Thus, "we limit our analysis to the words of the statute and apply the plain meaning of those words 'unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.'" *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019) (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)).

DISCUSSION

We look to the applicable statute's language to determine whether the City has properly alleged that the District's officers and commissioners acted *ultra vires*. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016). We begin by considering the proper construction of the statute at issue. *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). That is because whether the officials, conduct constitutes *ultra vires* actions that fall within an exception to governmental immunity depends on what the statute required of the officials. *See id.* "To determine whether a party has asserted a valid *ultra vires* claim, we must construe the relevant statutory provisions, apply them to the facts as alleged in the pleadings, and determine whether

those facts constitute acts beyond the official's authority or establish a failure to perform a purely ministerial act." *Tabrizi v. City of Austin*, 551 S.W.3d 290, 298 (Tex. App.—El Paso 2018, no pet.).

**Consent by the City**

In the City's original petition, the City complains that the "[d]efendants are acting *ultra vires* in an illegal attempt to deprive the City of its statutory rights" and that "[the District] and its commissioners and officers have acted *ultra vires* by attempting to annex municipal territory without [the City's] consent. . . ." The statutory rights the City claims it is being denied are found in section 775.014 of the Health and Safety Code which controls creation of an ESD. *See* TEX. HEALTH & SAFETY CODE ANN. § 775.014. Section 775.014, entitled "Creation of District that Includes Municipal Territory," provides, in relevant part:

> (a) Before a district may be created that contains territory in a municipality's limits or extraterritorial jurisdiction, a written request to be included in the district must be presented to the municipality's governing body after the petition is filed under Section 775.015. Except as provided by Subsection (c), that territory may not be included in the district unless the municipality's governing body gives its written consent on or before the 60th day after the date on which the municipality receives the request.
>
> (b) If the municipality's governing body does not consent to inclusion within the 60-day period prescribed by Subsection (a), a majority of the qualified voters and the owners of at least 50 percent of the territory in the municipality's limits or extraterritorial jurisdiction that would have been included in the district may petition the governing body to make fire control and emergency medical and ambulance services available. The petition must be submitted to the governing body not later than the 90th

day after the date on which the municipality receives the request under Subsection (a).

. . . .

(e) If the municipality's governing body consents to inclusion of territory within its limits or extraterritorial jurisdiction, or in an industrial district, the territory may be included in the district in the same manner as other territory is included under this chapter.

*Id.* Section 775.014, in essence, requires that before an ESD may be created that contains territory in the limits or ETJ of a municipality, a written request must be presented to the municipality's governing body and consent of the municipality must be obtained before the municipality's territory can be included in the ESD. *See id.*

The District's officers and commissioners take the position that consent by the City is only required when creating an ESD, not when expanding an ESD. This position is based upon section 775.051 of the Health and Safety Code which governs expansion of an ESD's territory. *See id.* § 775.051. Section 775.051, entitled "Expansion of District Territory," provides:

(a) Qualified voters who own taxable real property in a defined territory that is not included in a district may file a petition with the secretary of the board requesting the inclusion of the territory in the district. The petition must be signed by at least 50 qualified voters who own taxable real property in the territory or a majority of those voters, whichever is less.

(b) The board by order shall set a time and place to hold a hearing on the petition to include the territory in the district. The hearing may be held not earlier than the 31st day after the date on which the board issues the order.

(c) The secretary of the board shall give notice of the hearing. The notice must contain the time and place for the hearing and a description of the territory proposed to be annexed into the district.

(d)  The secretary shall:

> (1)  post copies of the notice in three public places in the district and one public place in the territory proposed to be annexed into the district for at least 15 days before the date of the hearing; and

> (2)  not later than the 16th day before the date on which the hearing will be held, publish the notice once in a newspaper of general circulation in the county.

(e)  If after the hearing the board finds that annexation of the territory into the district would be feasible and would benefit the district, the board may approve the annexation by a resolution entered in its minutes.  The board is not required to include all of the territory described in the petition if the board finds that a change is necessary or desirable.

(f)  Annexation of territory is final when approved by a majority of the voters at an election held in the district and by a majority of the voters at a separate election held in the territory to be annexed.  If the district has outstanding debts or taxes, the voters in the election to approve the annexation must also determine if the annexed territory will assume its proportion of the debts or taxes if added to the district.

(g)  The election ballots shall be printed to provide for voting for or against the following, as applicable:

> (1)  "Adding (description of territory to be added) to the _____ Emergency Services District."

> (2)  "(Description of territory to be added) assuming its proportionate share of the outstanding debts and taxes of the _____ Emergency Services District, if it is added to the district."

(h)  The election notice, the manner and time of giving the notice, and the manner of holding the election are governed by the other provisions of this chapter relating to those matters to the extent that those provisions can be made applicable.

*Id.*

Neither the City nor the District's officers and commissioners take the position that section 775.014 or section 775.051 is ambiguous. And we agree. The words of the statutes chosen by the Legislature serve as our guide in determining Legislative intent. *See KMS Retail Rowlett*, 593 S.W.3d at 183.

Sections 775.014 and 775.051 clearly differ. Section 775.051 has no provision that requires a request to, or consent by, a municipality, while section 775.014 requires notice by request and consent before territory in a municipality's limits or ETJ can be included in an ESD.

The enacted text of section 775.051 states that "[q]ualified voters who own taxable real property in a defined territory that is not included in a district may file a petition with the secretary of the board requesting the inclusion of the territory in the district." TEX. HEALTH & SAFETY CODE ANN. § 775.051(a). The Legislature did not include language that requires notice by a request to a municipality or consent by a municipality as it did in section 775.014, and the Legislature could have added language to that effect if that was its will. "When the Legislature has employed a term in one section of a statute and excluded it in another, we presume that the Legislature had a reason for excluding it." *Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 769 (Tex. 2000) (per curiam). We therefore conclude section 775.051 does not require an ESD to make a request to, or to obtain consent from, a municipality before annexing territory in a municipality's limits or ETJ. We will not insert a provision that requires a request to, or consent by, a

municipality into section 775.051 when such was not included in the enacted text. "We decline to engraft what lawmakers declined to enact." *See BankDirect*, 519 S.W.3d at 78. "'A court may not judicially amend a statute by adding words that are not contained in the language of the statute. Instead, it must apply the statute as written.'" *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 543 (Tex. 2021) (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam)). "Enforcing the law as written is a court's safest refuge . . ., and we should always refrain from rewriting text that lawmakers chose. . . ." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). "'If [the Legislature] enacted into law something different from what it intended, then it should amend the statute to conform to its intent.'" *In re Allen*, 366 S.W.3d at 708 (quoting *Harbison v. Bell*, 556 U.S. 180, 199, 129 S.Ct. 1481, 1494, 173 L.Ed.2d 347 (2009) (Thomas, J., concurring)).

**Authority to Annex**

The City argues that section 775.014 is the only provision contained in chapter 775 of the Health and Safety Code that grants an ESD authority to annex portions of territory in a municipality's limits or ETJ and asserts that section 775.051 does not contain a grant of authority to an ESD to annex territory in a municipality's limits or ETJ.

The City's contention that section 775.014 is the only provision that grants an ESD authority to annex portions of territory in a municipality's limits or ETJ does not flow from a reading of the plain language of the enacted text. Section 775.014 states that

"[b]efore a district may be *created* that contains territory in a municipality's limits or [ETJ], a written request to be included in the district must be presented to the municipality's governing body after the petition is filed under Section 775.015." TEX. HEALTH & SAFETY CODE ANN. § 775.014(a) (emphasis added). The clear intent of the Legislature is to provide notice to municipalities and to give municipalities a right to deny consent before territory in a municipality's limits or ETJ is included in an ESD at the time the ESD is *created*. *See id*.

Section 775.051 allows for annexation of "territory," and the Legislature did not include language that limits the type of territory that may be subject to annexation. *See id*. § 775.051(a). The Legislature did not include language that the territory could not be in a municipality's limits or ETJ. *See id.* Nothing in the enacted text of section 775.051 prohibits annexation of a municipality's limits or ETJ by an ESD. *See id.*

We therefore conclude that section 775.014 is the only provision that requires a request to a municipality and consent by a municipality but not the only provision that gives an ESD the authority to include within its territory a municipality's limits or ETJ.

**Absurd Result**

The City also argues that it is inconsistent with the clear intent of the Legislature and would produce absurd results for an ESD to have the authority to annex territory in a municipality's limits or ETJ under section 775.051. The City contends that such an interpretation would render municipal consent meaningless.

By the enacted text, section 775.051 applies to an existing ESD that receives a petition to include additional territory in the ESD, and section 775.014 applies to the initial creation of an ESD. Section 775.014 has a procedure for filing and approving a petition to initiate an ESD, and section 775.051 has an entirely different procedure for filing and approving a petition to expand an ESD. "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008)). "It follows, then, that '[w]hen the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded.'" *City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 260–61 (Tex. 2018) (quoting *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995)).

The City's proposed interpretation is inconsistent with both the presumption that the words of a statute are chosen for a purpose and the presumption that the words not chosen are omitted for a purpose. The City's construction assumes that the municipal-consent requirement was excluded from section 775.051 for no purpose. The City argues that applying section 775.051 in a manner that does not require municipal consent renders municipal consent at the creation stage futile. While the City's argument may have merit, it is not our function to revise the Legislature's policy choices. *See Hidi*, 13 S.W.3d at 769. And as to whether such a reading renders municipal consent meaningless in practice,

"we read unambiguous statutes as they are written, not as they make the most policy sense." *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013).

We cannot say that the differing procedures provided for by sections 775.014 and 775.051 lead to an absurd result.

**Factual Allegations of Ultra Vires Acts**

The City acknowledges in its original petition that the District was created in 2019 and that "[i]t now appears that the individuals behind the creation of [the District] always intended to include, within the district's ultimate boundaries, territory that is within [the City's] ETJ, but sought to evade the statutory requirement of obtaining the City's consent." The "individuals" alleged to have been part of the plan to avoid the request and consent requirement are not identified and, more importantly, are not alleged to have been the District's officers or commissioners. Because it is undisputed that the District was created in 2019, the action by the District now complained of by the City can be nothing other than an expansion of the District's territory under section 755.051.

A petition to initiate an expansion of an ESD is filed with the secretary of the ESD's board as directed by section 775.051(a). *See* TEX. HEALTH & SAFETY CODE ANN. § 775.051(a). Section 775.014 is not applicable because the requirement that the District send a written request to the City for consent is only triggered when a petition to create an ESD is received by the county judge and filed with the county clerk under section 775.015. *See id*. §§ 775.014–.015, 775.051. Therefore, petitions to initiate an expansion of

an ESD into the limits or ETJ of a municipality do not require a request to, or consent by, the municipality.

Furthermore, there are no facts alleged in the City's lawsuit that a specific officer or commissioner drafted the language in the petition for expansion, only an allegation "that, on information and belief, [the petition] was prepared by or in consultation with [the District] attorneys and board members. . . ." Vague and conclusory statements within a pleading are insufficient to support jurisdiction. *See Flynn*, 228 S.W.3d at 660. Even taking the allegation as true, it is not a violation of any section of chapter 775 of the Health and Safety Code for an officer or commissioner to participate in drafting or preparing a petition. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 775.001–.306. It is important to recognize that a petition to expand an ESD comes directly from the voters and is ultimately presented to an ESD's board secretary by the voters. *See id.* § 775.051.

Our review of the City's live petition leads us to conclude that all of the complained-of acts either were within the District's statutorily authorized discretion, were authorized by statute, or were not in violation of a controlling statute; therefore, the City's allegations fail to invoke the district court's inherent jurisdiction to remedy *ultra vires* acts. The District, as a subdivision of the state, is protected by governmental immunity, leaving the trial court without subject-matter jurisdiction over the City's lawsuit. We sustain this issue.

## Conclusion

We reverse the trial court's order denying the District's and its officers' and commissioners' motion to dismiss for lack of jurisdiction and render judgment that the underlying lawsuit is dismissed.

MATT JOHNSON
Justice

Before Chief Justice Gray,*
      Justice Johnson[2], and
      Justice Smith
*Chief Justice Gray dissents
Reversed and Rendered
Opinion delivered and filed December 7, 2022
[CV06]



---

[2] This opinion was circulated by the authoring justice for review by the panel members on August 30, 2022.